<div style="margin">CUDDY<br>
v.<br>
BELLEVILLE<br>
IRON WORKS<br>
COMPANY</div>

from the first week of November to the fourth day of July as one term, such an interpretation would involve practical results which certainly could not have been contemplated by the act of 1843. There was no hardship in the fiction of law involved in that statute, which considered a party as in court during a term which in the country parishes rarely was prolonged beyond two or three weeks, and in the district court of the first judicial district covered one month. But to consider a litigant as being constructively present in court after judgment, during a period of nine months, and bound day by day thereafter to watch the minutes of the court, and take notice of an order of appeal, would be extremely onerous, and a statute made to further justice, might become an instrument of injustice. Considering the evils which the statute of 1843 was intended *to remedy*, the unreasonableness of inferring from subsequent legislation any intention to deprive litigants at New Orleans of the benefit of that statute, the absence in the statute of 1846 of an express designation of a term *eo nomine*, and the inconsistency of any other interpretation than that which wo now adopt, with the true spirit and intention of the act of 1843, we conclude that the intention of the law-giver will be fulfilled by considering the act of 1843 as still applying to the district courts of New Orleans; and this to the same extent and in like manner *as the same was understood and practised, with the concurrence of the* bench and bar, during the existence in New Orleans of the various courts to which under the new Constitution and the act of 1846, the present courts have succeeded. This practice we understand to have been, to consider the terms as monthly for the purposes of appeal under the act of 1843, although in point of fact the former courts, like the present, sat continuously from November to July.

As the month in which the judgment in question was rendered and signed, had expired before the motion for appeal was made, we are of opinion that it cannot be considered as being within the act of 1843, so as to dispense the necessity of citing the appellee. And as the absence of citation is attributable to the fault of the appellant, it follows that the appeal must be dismissed, which is now ordered accordingly; the costs of the appeal to be paid by the appellant.

---

## FAVROT *v.* DELLE PIANE.

Where one who has obtained an attachment against a debtor, subsequently applies for a second attachmemt on the ground of the insufficiency of the property originally attached, he must show, under oath, the continued existence of the debt and the necessity for the further process asked for, or the application must be rejected.

One who has acquired a domicil in the State cannot escape a constructive personal citation, and the personal jurisdiction of the court of that domicil, but by the acquisition of a domicil in some other parish of the State, or by an actual removal from the State.

Where a court, from which an attachment had been issued, had acquired a personal jurisdiction of the defendant, it may, upon an affidavit showing the insufficiency of the property attached and the continued existence of the debt, issue a second attachment directed to the sheriff of another parish in which the defendant has property. *Per Cur:* Viewing the attachment *as a conservatory measure incident to the main action*, there seems no reason why the jurisdiction of the court, for the purposes of attachment, where the debtor is personally cited, should be confined within its territorial limits any more than in the case of a *fi. fa.* upon a judgment *in personam*, which may issue to any parish in the State. *Aliter,* Where the jurisdiction of the court, being exercised only *in rem*, vests solely upon

the property attached, in which case the power of the court is confined to its territorial limits. In such a case it acts upon the thing, and not upon the person of its owner. Its jurisdiction is derived from the seizure of the property, and its judgment has no vitality except against the thing thus subjected to its control.

FAVROT
*v.*
DELLE PIANE.

APPLICATION for a Mandamus to *Burk*, Judge of the District Court of West Baton Rouge. *Elam* and *Morgan*, for the applicant. The judgment of the court was pronounced by

SLIDELL, J. The main question presented in this case is, whether the District Court in and for the parish of West Baton Rouge has jurisdiction to issue process of attachment, to attach the property of *Bernard Delle Piane*, in the parish of East Feliciana. It appears from the allegations of the petition and affidavit in the cause, and the petition of the applicant to this court, that *Delle Piane* was, at the date of the institution of the suit, domiciled in the parish of West Baton Rouge. It is however stated that he had abandoned the plantation which he had cultivated in that parish, and had removed from that parish; and that the plaintiff had just reason to fear that he would remove permanently out of the State. The affidavit annexed to the original petition declared that the allegations of the petition were true, and that the defendant was about to remove permanently from the State, and will so remove with his property unless detained by an order of attachment. Upon this showing the District Judge, sitting in the parish of West Baton Rouge, ordered, on the 5th October, 1849, that an attachment issue as prayed for, on giving bond, &c. In November following, the plaintiff presented a supplemental petition, in which, after refering to his previous petition and the process of attachment which he had obtained, he alleges that the property found in the parish was encumbered by previous liens and insufficient to satisfy his claim; that the defendant possessed other property in the parish of East Feliciana. It was therefore prayed that an order be granted for a writ of attachment, addressed to the sheriff of that parish. This petition was not accompanied by an affidavit.

The judge declined to grant the order, being of opinion that he was without jurisdiction. Therefore a petition, under oath, was presented to this court, applying for a mandamus to the district judge. In this petition the applicant declares that he has good reason to believe, and does believe, that *Delle Piane* is about leaving the State permanently; that the property already attached is insufficient to meet his claim; that his debtor has removed property to the parish of East Feliciana, where he owns and possesses it at this time; and that the district judge has refused to order the issuing of a writ of attachment to that parish.

We are of opinion that, aside from the question of jurisdiction, the district judge might have properly refused the order applied for; because there was no showing under oath of the continued existence of the debt, and the necessity of the further process demanded. This is a sufficient reason for refusing the mandamus. But as the district judge based his refusal upon the ground of a want of jurisdiction, and as a formal application would be refused upon the same ground, we have thought proper, in order to avoid a delay which might prejudice the plaintiff's interest and a renewal of the application to this court, to express our views in some degree upon the question of jurisdiction in cases of attachment, as applicable to what we understand to be the merits of the plaintiff's application. In doing so, we shall assume that West Baton Rouge was the legal domicil of the defendant at the institution of the suit. That it was until

74

FAVROT
v.
DELLE PIANE.

very recently his domicil is clear; and as no new domicil within the State had been acquired, under the plaintiff's allegations, as the permanent departure from the State was a matter resting in intention and consummated by an actual departure at the date of the institution of the suit, and as, under the well settled principles of jurisprudence and the textual provisions of our Code of Practice, a man's old domicil can only be changed by the adoption of a new one, *animo et facto*, we therefore may properly hold that the parish of West Baton Rouge was his domicil at the time of the institution of the suit, and consequently that the district court of that parish could acquire jurisdiction of the cause *ratione personæ*. The mere personal departure of the defendant from the parish did not prevent the service of a citation, for art. 253 of the Code of Practice delares that the sheriff must serve the citation, 1st, on the person of the defendant, or at his domicil, if he has one in the place, or if he be about to leave the State; 2, at the place where the defendant has resided last, if he had a domicil in the place and conceal himself to avoid being cited. It seems to be the clear intention of the law, so far as suits by attachment are concerned, that a man once domiciled in the State shall not escape a constructive personal citation and the personal jurisdiction of the court of that domicil, except by the acquisition of a domicil in some other parish of the state, or, by an actual removal from the State.

If then the District Court of the parish of West Baton Rouge has acquired a personal jurisdiction over the defendant, either by a personal service of citation upon him, or by a service of citation at his late residence, he, although absent from the parish, not having left the State nor acquired a domicil in any other parish of the State, then, in our opinion, the district court would have the right to issue process of attachment to the sheriff of East Feliciana upon affidavit showing the insufficiency of the property attached, the continued existence of the debt, &c. For such process, when the defendant is personally cited, is not, as observed by Martin, J. in *Williams* v. *Kimball*, 8 N. S. 354, a mode of bringing suit, but a conservatory act, a remedy or incident, which may precede or accompany the action. See also C. P. 208, 209.

Viewed in this light, as a conservatory measure incident to the main action, there seems no reason why the jurisdiction of the court for the purposes of attachment, where the debtor is personally cited, should be confined within its territorial limits, any more than in the case of a *fieri facias* upon a judgment in *personam*, which undoubtedly may issue to any parish within the State.

There is a manifest distinction between the case supposed, of a court which has acquired personal jurisdiction, and that of a court whose jurisdiction being exercised only *in rem*, rests solely upon the property attached. In the latter case the power of a court seems to us to be limited to its territorial limits. It acts upon the thing, not upon the person of its owner. Its jurisdiction is described from the seizure of the property, and its judgment has no vitality except against the thing thus subjected to its control. If there be no property within its territorial limits and no personal citation, no jurisdiction vests, and its process and decree would be merely null. See *Jobson* v. *McRae*, 3 An. 301. *Brougham* v. *Ring*, 2 An. 571.

In expressing the opinion that a court which has jurisdiction *ratione personæ*, and has exercised it by citation, can extend the incidental remedy of attachment by issuing its process to the sheriff of another parish, we do not undertake to say in what mode the attachment thus levied may afterwards be enforced.

Difficulties may arise which it is not necessary now to solve, as in case of a garnishee declining to answer out of the parish of his domicil, &c. These difficulties, however, pertain rather to the exercise of the right than to the right itself. It is also obvious that where a corporal thing in the possession of the debtor is seized in another parish, there could be no greater inconvenience arising in case of an attachment than in that of a *fi. fa.* emanating from a court sitting in another territorial jurisdiction. We may add that the subject of garnishment, when the garnishee under *fi. fa.* lives in a different parish from that in which the court sits from which the process emanated, was noticed in the case of *Featherston* v. *Compton*, 3 An. 380.

It not appearing that the district judge erred in rejecting the application, as made to him, for an order of attachment, it is therefore ordered that the petition for mandamus be dismissed at the costs of the applicant.