NANCY HUNT, EXECUTRIX, *v.* WILEY H. POTTER, ADMINIS-
TRATOR.

1. CHANCERY. *Jurisdiction. Unliquidated demand against an estate. Sect. 976, Code 1871.*

Under sect. 976 of the Code of 1871, the Chancery Court in which an estate was being administered had jurisdiction, upon a bill filed for that purpose, to adjudicate the validity and amount of any demand arising *ex contractu* against such estate, and to decree the payment thereof out of the estate. But it was optional with the creditor to present his demand in the Chancery Court in the first instance, or to obtain judgment in a court of common law first, and then file it for allowance in the Chancery Court. Whether a demand arising *ex delicto* was within the jurisdiction conferred by sect. 976 is not decided.

2. JURISDICTION OF COURTS. *Legislative power. Rule of construction.*

Any grant of power to the several courts of this State by the Legislature is constitutional if it come within the rule that the power granted, though it may never have been exercised by the court to which the grant is made, and has been uniformly a part of the jurisdiction of another court, pertains to some matter of jurisdiction conferred by the Constitution on the court which is the grantee of the power (as in case of the Chancery Court, to matters "of equity, or matters of testament and administration," etc.), and is auxiliary and appropriate to the complete exercise of the acknowledged jurisdiction of the court as conferred by the Constitution.

APPEAL from the Chancery Court of Hinds County.

Hon. E. G. PEYTON, Chancellor.

This appeal was taken from an order overruling a demurrer to a petition setting forth the facts hereafter stated in the opinion of the court.

*Frank Johnston*, for the appellant.

The Chancery Court has no jurisdiction of this case. Sect. 976 of the Code of 1871 does not confer this jurisdiction. It must be construed in connection with sect. 1142 and other provisions of chap. 9 of the Code. Sect. 976 does not pretend

to prescribe specially the precise jurisdiction or particular remedies, but only in general terms enumerates the heads of jurisdiction, or the general subjects of jurisdiction, of the Chancery Court. It is declared that the jurisdiction extends to the demands of creditors against an estate. But this is a general provision, giving in broad outlines this, among others, as one of the subjects of jurisdiction. Construing this language with the other provisions of the chapter, it will be seen that the jurisdiction declared generally in sect. 976 is specifically regulated or limited, and the particular remedies prescribed. Thus, sect. 976 having conferred jurisdiction of the general subject of demands of creditors, sects. 1136–1140 prescribe the mode in which claims are to be probated, and sect. 1141 prescribes the time within which they are to be presented for probate and allowance. Sect. 1142 provides for the contest of claims by exceptions to be propounded by the administrator or executor, and sect. 1161 prescribes the mode of contesting claims against insolvent estates.

Nowhere in the whole chapter is there an intimation of a legislative intention to confer the jurisdiction claimed in this case. And, it is worthy of consideration that if so new and novel a jurisdiction had been intended to be conferred, it would have been distinctly and clearly given, and the form of remedy and mode of proceeding would have been prescribed by the statute. If this construction is not correct, and the terms "all demands   *   *   *   against the same" are to be construed *per se*, without reference to any other clauses, and held to mean in fact all demands of every kind, then the only inquiry is, What is meant by the words " all demands "? and the jurisdiction must be governed and defined by the extent of the meaning thus ascertained. In other words, if the literal force and meaning of these words is to be limited and controlled by an intelligent construction of the whole statute, then this purely legal demand and purely legal remedy will be excluded ; if the words " all demands " are to be simply defined, then the jurisdiction must be absolutely coextensive

with that definition. Let us ascertain that definition. It is a calling for a thing due, or claimed to be due — a claim. Burrill's L. Dic. 468. "Demand" is one of the most comprehensive terms in the law. Co. Lit. 291 b; 1 Denio, 257–261. It is of broader import than debt, and embraces rights of action beyond those which may be appropriately called debts. 2 Hill, 220–223. It would therefore include every claim and right of action known to the law — all rights of action, *ex contractu* as well as those *ex delicto*, resting in tort, that survive against a debtor's estate. Hence, a demand for a promissory note debt, as well as a demand for a personal tort, could be sued on in the Chancery Court. So, also, actions of trover, detinue, and replevin could be there brought. It is impossible to imagine that this extensive and complicated mass of common-law actions and jurisdiction was intended to be conferred upon the Chancery Court.

Under the Probate Court system, the Constitution gave full jurisdiction in matters of administration, and yet it was uniformly decided by the courts that a title to property held adversely could not be tried by the Probate Court. *Snodgrass* v. *Andrews*, 30 Miss. 472. Nor could it try a question of title at all, except where it arose incidentally, and not by direct proceeding. *McWillie* v. *Van Vacter*, 35 Miss. 428. It was never supposed that an adverse claimant could sue an administrator in the Probate Court in trover, any more than an administrator could bring such a suit in that court. And yet, if we test the *jurisdiction* by the legal *definition* of the word "demand," we must allow the *former* to the full extent of the *latter*. Such a result would work a most startling and radical change in our whole system of jurisdictions and remedies.

Recurring at this point to the original proposition, that sect. 976 must be construed *in pari materia* with the whole chapter, attention is directed to sect. 1163, which evidently contemplates that administrators and executors are to be sued at law, and the debts judicially established at law; also to sect. 1176,

which provides for the survival of actions against the personal representatives of decedents, allowing them to be sued at law or equity, evidently according to the intrinsic nature of the demand. Moreover, sect. 1136, providing that the probate in common form shall not be binding, declares that the administrator or executor, if he believes the claim is unjust, shall withhold payment until the same shall be established by suit — that is, *established* by a suit instituted by the creditor. This, on construction, fairly means a suit at law, and, moreever, a suit by the creditor. It could not be said to mean that the administrator should not pay until *he had*, by his exceptions, had the creditor's demand established. The language used, " until the same shall be established by suit," means a suit of the creditor; in law language, the prosecution of some demand in a court of justice. 2 Bouv. L. Dic., tit. " Suit," 494; 6 Wheat. 407.

Under the statute, the claim, once judicially established, is to be paid by the administrator if the estate is sold, and can be enforced by execution at law. If the estate is insolvent, the court administers the assets by applying them *pro rata* to all the claims.

The vice of the theory in favor of the jurisdiction is that it goes too far and proves too much; for it proves the preposterous proposition that *all demands ex contractu* and *ex delicto* can be sued on in the Probate Court. The action of trover for a *mule*, or replevin for the same kind of animal, in the Chancery Court, would be regarded as *an extraordinary event.* It would not do to say that the words " all demands " do not embrace such a claim, for a suit for a mule is in every correct legal sense a demand. But, even if it was not, the plaintiff could sue in *assumpsit* for its value, and that suit would be substantially, though not in form, the same.

*M. Green,* for the appellee.

It will be perceived that the sole question in this case is, whether the Chancery Court. upon petition of a creditor, has the power to allow and order paid a debt by open account,

partly accruing in the lifetime of the testator, and partly afterwards under a continuing employment.

Said court has "*full jurisdiction in all matters of administration.*" Const., Art. VI., sect. 16 ; Code 1871, sect. 974.

In sect. 974 of the Code, *supra*, the general jurisdiction of the court as defined by the Constitution is laid down. Sect. 976, Code 1871, "in addition" to the jurisdiction granted by sect. 974, confers the "power and jurisdiction to *hear and determine* all questions in relation to the execution of the trusts of such executors, administrators, and guardians, or other officers appointed for the administration and management of such estates, *and of all demands against the same, and such estates, whether claimed by * * * creditors or otherwise.*"

Ths, by these sections the most latitudinary jurisdiction is given to hear and determine the demands of all persons against the estates. In the absence of any conflicting clause in the statute law limiting the jurisdiction thus conferred, the rules of construction would require that it should embrace every demand against the estate. But, for the purposes of this case it is unnecessary to argue what classes of demands might or might not be embraced in this general description. I am clear, though with all deference, that it embraces all matters of debts, arising in what form soever, whether by bond, note, account, etc. The whole statute law in regard to administration of estates has *sole reference to debts*, and the whole theory of administration has for its foundation and purpose the sole end of payment of debts ; for, if there are no debts, then the estate, of all kinds, passes to the heir by descent. Hence, in undertaking to deal with the matter, the statute refers to payment of debts, and the chancery court deals alone with the monetary matters of the estate. Sales are ordered by that court of realty and personalty to pay debts. Hence I say that *demands* of creditors means monetary demands.

In pursuance of the provisions of sect. 976, the Legislature prescribes forms in which creditors are to propound their

debts against the estate.   Sect. 1135 prescribes that publica-
tion be made, and that all creditors (" all persons having
claims against the estate") exhibit and have registered their
claims.   Sect. 1136 provides that the registration prescribed
by sect. 1135 shall not make it imperative upon the adminis-
trator to pay, but he may not pay until *established by suit.*
Then sects. 1137, 1138, 1139, and 1140 prescribe how each
class of monetary demands shall be proven for registration.
Sect. 1137 is confined to judgments or decrees ; sect 1138 to
bail, bond, specialty, note, or bill of exchange ; sect. 1139 to
rent on lease ; sect. 1140 to open accounts.   Thus every
class of monetary demands known to the law is specifically
provided for in different sections.   There is no *allowance by
the court* prescribed for judgments, bail, bonds, notes, spe-
cialties, bills of exchange, or rent on lease, by sects. 1137,
1138, and 1139.   But in regard to open accounts, sect. 1140
prescribes not only a registry, but : " *and, moreover, no such
account shall be paid until it is first allowed by the chancery
court in which the estate is administered, or the chancellor or
clerk in vacation.*"   That is, *and in addition to* the registry,
the open account shall not be paid *until first allowed* by the
court.   Thus the power to allow is not only specifically con-
ferred upon the court, but the exercise of that power is made
a condition precedent to the payment of the account.   The
same power is conferred by sect. 1142 (and this embraces de-
mands named in sects. 1137, 1138, and 1139).   It distinctly
confers upon the court the power to allow or disallow any
claim.   The reference to auditors therein prescribed does not
affect the question of jurisdiction : their report is merely the
evidence upon which the court exercises the jurisdiction.
Under sect. 1140, the creditor must initiate proceedings to
have his account " allowed ; " but under sect. 1142 the ad-
ministrator initiates proceedings to have the claim presented
or registered disallowed.   The creditor may present or regis-
ter his *account,* and after registry, if the administrator thinks
it incorrect, he may except under sect. 1142 ; or the creditor,

after registering his account, may petition the court for its allowance, and thus in either of the two modes the validity or invalidity of the account can be tried. In the classes of cases mentioned in sects. 1137, 1138, and 1139, there is no specific direction for an allowance as a condition precedent for payment. Certainly, under sect. 1142, the administrator can test the validity of those classes of claims; but whether, in the absence of a statutory direction, their validity can be tested by petition for allowance under the general provisions of sect. 976 it is not necessary to argue, for none of these classes are before the court. I can see no reason why they could not.

But it is contended that sect. 1136 prescribes that claims " shall be established by suit," and that this means suit at common law. Suit means " an action." 2 Bouv. L. Dic. 558. It may be at law, in equity, in bankruptcy, in probate. Establishing by suit means only that the validity of the debt shall receive judicial approval. *That* judicial approval or sanction is obtained on debts against estates through the judgment or decree of the chancellor. It is prescribed that the *account* shall be first allowed by the chancellor or clerk in vacation. Thus the account or claim is established by suit, for it has the decree of the court that it shall be allowed. The term " allow," used in the statute, embraces two ideas: one, the ascertainment of the correctness of the account; the other, ordering it paid upon such ascertainment.

This proceeding for allowance is as much a suit as an action at law.

I do not contend that this jurisdiction is exclusive of that at law. It is coördinate. While the judgment at law can be satisfied by execution, that of equity acts upon the person of the administrator and compels him to pay. It is two modes of doing the same thing.

CHALMERS, C. J., delivered the opinion of the court.

George L. Potter, an attorney-at-law, was employed by S.

F. Hunt to defend a suit for $150,000, brought by the United States government against the latter and the sureties on his official bond as internal revenue collector. Hunt died pending the litigation, and Potter thereafter continued his attention to the case without objection from the personal representatives of the estate. There was no agreement as to the fee to be paid, and, Potter being now dead, this bill is filed by his administrator against the executrix of Hunt, in the Chancery Court of Hinds County, in which the estate of Hunt is being administered, for the purpose of having the amount of Potter's fee settled by the chancellor upon a *quantum meruit*, with a decree for its payment.

It is objected, by demurrer, that the remedy is in a court of law, and not in equity.

The question presented is whether, by sect. 976 of the Code of 1871, the chancery court in which an estate is being administered is given jurisdiction to hear and determine purely legal demands against it, and by decree to direct their payment. We held in *Clopton* v. *Haughton*, 57 Miss. 787, that jurisdiction was by this section conferred in behalf of creditors whose claims had been reduced to judgment, to compel their payment, but we pretermitted the question whether a creditor at large could, by virtue of the section referred to, have the validity and the amount of his demand adjudicated in the court which had granted administration of the estate and was engaged in winding it up.

This question we must now meet, and we answer it in the affirmative.

The statute declares that, " in addition to the powers and jurisdiction hereinbefore conferred upon said chancery court, the court in which the will may have been admitted to probate, letters of administration granted, or guardians may have been appointed, shall have power and jurisdiction to hear and determine all questions in relation to the execution of the trusts of such executors, administrators, and guardians, or other officers appointed for administration and management

of such estates, and of all demands against the same, and [against] such estates, whether claimed by heirs-at-law, distributees, devisees, legatees, wards, creditors, or otherwise," etc.

" The power and jurisdiction " is given not only " to hear and determine all questions in relation to the execution of the trusts " by the fiduciaries to whom they have been committed, and " all demands against the same " (that is to say, all demands against said fiduciaries), but also " to hear and determine all demands " against " such estates " (that is to say, against the estates by them being administered).

It will be observed that we insert the word " against " before the words " such estates," but we do so only to make the sentence more euphonious, and because such is its obvious meaning.

There is no escaping the plain import of these words. The explicit declaration is that the court which has granted admintration of an estate shall be open to hear the complaints of all persons interested in it, both for the purpose of compelling a due performance of duty by the administrator and of determining the justice of all demands propounded against it. While it does not compel the institution of any suit in that forum, its object seems to be to authorize, and perhaps to encourage such suits, to the end that the tribunal charged with the duty of settling the estate may be armed with full power to adjudicate and determine every question in any manner affecting it. It simply extends to solvent estates that power which the court has always exercised as to insolvent ones, and is intended to draw, or at least to authorize the drawing, into a single forum, so far as the estates of decedents are concerned, of all the powers heretofore distributed among several. ‘ It still remains optional with the creditor, however, whether he will avail himself of the new jurisdiction, or whether he will first reduce his demand to judgment in a court of law and then file it for allowance in a court of chancery.

We are not unmindful that in giving this construction to the

statute, or rather in announcing a meaning that seems too plain
to require construction, a new and wide departure from the
course of practice heretofore pursued in the State is inaugu-
rated or sanctioned, but we doubt neither the correctness of
the views announced nor the wisdom of the system inaugu-
rated.   We feel confident that it will promote the interest of
the estates of decedents, and simplify the methods of enforc-
ing demands against them, to vest in a single court full juris-
diction to determine all questions in relation to them.   Neither
do we entertain any doubt as to the constitutionality of such
legislation.   Chancery courts are by the Constitution given
full jurisdiction " in all matters testamentary and of adminis-
tration."   The adjudication of demands against the estate of
a deceased person falls fairly within the terms, " matters of
administration."

It will be observed that the jurisdiction is by the statute
limited to demands *against* estates, and does not extend to
demands of estates against living persons.

It is possible, too, that the word " demands," though exceed-
ingly broad in its signification, should be held as not extend-
ing to demands arising *ex delicto*, but should be limited to the
several classes of demands or claims mentioned in subsequent
sections of the chapter, to wit : judgments and decrees, in sect.
1137 ; recognizance, bails, specialties, notes, bonds, bills of
exchange, etc., in sect. 1138 ; leases, in sect. 1139, and open
accounts, in sect. 1140 ; or, generally, to demands arising *ex
contractu.*   Upon this subject, however, we express no definite
opinion.

Decree overruling demurrer affirmed, and sixty days given
to answer.

GEORGE, J., concurring.

In the opinion of the court, read by the chief justice, a
very enlarged jurisdiction, in virtue of the statute, is conceded
to the chancery court.   In view of this, it is proper that we
say something of the power of the Legislature to add to the

jurisdiction of the several courts, as conferred on them by the
Constitution. That the statute, in terms, gives the jurisdic-
tion to each of the chancery courts to enforce the collection
of all debts due by decedents whose estates are being admin-
istered in that court, as stated in the opinion, is, we think,
undeniable. We do not doubt that the statute as thus con-
strued is constitutional. It is difficult, if not impossible, to
draw a line which will exactly define in all cases what new
powers may and what may not be conferred by statute on the
several courts. It is easy to mention instances in which juris-
diction, if attempted to be conferred, would be beyond the
power of the Legislature to grant. Thus, the Legislature
cannot confer on a chancery court the power to try an action
of trespass or an indictment for murder. But from the com-
mencement of our judicial history the Legislature has exer-
cised unquestioned the power to enlarge the jurisdiction of
the courts provided for in the Constitution. Among these
new powers conferred on courts of law may be mentioned
the power to entertain bills of discovery in aid of actions
pending in them ; the power to entertain actions against mar-
ried women for the purpose of charging their separate estates
with their contracts ; the power to enforce the lien of mechan-
ics ; the power to set aside fraudulent assignments by *scire
facias.* The Legislature has conferred on chancery courts
the power to enforce purely legal demands by foreign attach-
ment, and a like power to enforce bonds of receivers appointed
by the court and contracts for the purchase of property sold
under the decree of the court, and to render judgment *in
personam* for a balance due on a mortgage after a sale of the
mortgaged property. And it has conferred on the Supreme
Court, which has an appellate jurisdiction only, the power to
enter judgments in the first instance on writs of error and
appeal bonds, and on recognizances for the appearance of
parties before the court.

Under a rule which prohibits the Legislature from enacting
laws conferring new jurisdictions on the several courts, all

these grants would be unconstitutional. Most of these grants can be maintained under the following rule, which may now be considered as firmly established in this State, viz. : That, although the particular power granted may never have been exercised by the court to which the grant is made, and has uniformly been a part of the jurisdiction of another court, yet if it pertains to the matters of jurisdiction conferred by the Constitution on the court which is the grantee of the power (as in case of the chancery court, to matters " of equity or matters of testament and administration," etc.), and the power granted is auxiliary and appropriate to the complete exercise of the acknowledged jurisdiction of the court as conferred by the Constitution, then it is within the power of the Legislature to confer it.

Under this rule, the grant of the new jurisdiction involved in this case is sustainable. True, the power to enforce a purely legal demand belongs to the common-law courts, and could not, as a substantive, independent power, be conferred on the chancery courts ; but when a particular chancery court has under its charge the administration of a decedent's estate, then it may be clothed with the power to administer it fully and completely, at least to the extent of determining upon every duty imposed by law upon the administrator and enforcing its performance. The law imposes on the administrator the duty of paying all valid debts against the estate, so far as there may be assets. The administrator may dispute a claim presented, or, acknowledging its justice, may neglect to pay it. In the first case, the duty of the administrator to pay can be determined only by a decision as to the validity of the demand; in the latter the duty is acknowledged, but there is a failure to discharge it. It is, therefore, an appropriate grant of power to the court to authorize it, at the instance of the claimant, to compel the administrator to pay the claim, if valid, and to determine upon its validity. The claimant, in asking the interposition of the court to compel the administrator to pay a demand whose validity has not

been settled by judgment at law, submits himself to the juris-
diction of the court to render an adverse judgment against
him, which would be a bar to an action at law on the same
matter.    He is not bound to resort to chancery until his
claim has been adjudged valid.    He may, however, do so ;
and if he does, he invokes under the statute an appropriate
power of the court, the exercise of which is extremely con-
venient for the full and speedy settlement of the estate which
is being administered by the court.    And there may be in-
stances in which the court, in the discharge of its duty to dis-
tribute according to law the assets of the estate, may be
authorized to adjudicate upon the validity of the demands of
the several claimants though no suits in that court had been
instituted to enforce them.    The statute only gives the court
jurisdiction over demands against the estate, and is, therefore,
clearly within the above rule.    A very different question would
be presented if the Legislature were to attempt to confer the
power on a chancery court to enforce collection of demands
in favor of an estate administered by it.    Such a statute
would confer on the court a jurisdiction, against his will, over
a party not ordinarily subject to its powers ; and as to the
validity of such a law we express no opinion, noting only that
it is a different case from the one at bar.