W. T. Chapman, Sheriff of Sumter County, Flor-
     ida, Plaintiff in Error, vs. John M. Reddick,
     Defendant in Error.

1. The Legislature has power to authorize the Circuit Courts to is-
     sue writs to be executed in any part of the State, where such
     writs merely enable the court to fully exercise its rightful con-
     stitutional jurisdiction by giving notice to the party defendant,
     or by securing his property or a lien thereon as an auxiliary, in-
     cidental or conservatory measure in suits wherein such courts
     have jurisdiction over the subject matter of the action granted
     by the constitution, and the exercise of such power does not
     confer extra-territorial jurisdiction upon the Circuit Courts in
     violation of the Constitution.
2. The provisions of Sections 998 and 1014, Revised Statutes, au-
     thorizing summons *ad respondendum* to issue from a Circuit
     Court to be served upon defendants in another county or cir-

cuit in actions rightfully instituted in such courts upon a subject matter within its constitutional jurisdiction, though none of the defendants are served in the county or circuit wherein the court issuing it sits, are valid legislative enactments and confer no extra-territorial jurisdiction upon Circuit Courts in violation of the Constituton.

3. The provision of Chapter 3721, Acts of 1887, authorizing writs of attachments to issue from a Circuit Court of one circuit to be executed by levy upon defendant's property in another county or circuit, in actions rightfully brought in such courts, the subject matter of which is within the constitutional jurisdiction of such court, are valid legislative enactments and confer no extra-territorial jurisdiction upon Circuit Courts, in violation of the Constitution.

4. The Circuit Courts of this State are superior courts of general jurisdiction, and nothing is intended to be out of the jurisdiction of a superior court, except that which specially appears so to be.

5. Where an officer places attached property in the hands of another person for safe keeping without the consent of the plaintiff in attachment, he is liable for the failure of such other person to exercise ordinary care to preserve it, and if the property is lost or stolen by reason of the failure of such other person to exercise such care, the officer will be liable to the plaintiff in attachment after such plaintiff shall have obtained a valid judgment preserving the attachment lien, for the value of the attached property, not to exceed, however, the amount of his judgment.

Writ of error to the Circuit Court for Sumter county.

The facts in the case are stated in the opinion of the court.

*J. C. Langley*, for Plaintiff in Error.

*T. M. Shackleford*, for Defendant in Error.

CARTER, J.:

On July 22, 1889, defendant in error began an action against plaintiff in error in the Circuit Court of Sumter county, to recover damages for defendant's failure and refusal to levy and collect an execution. The defendant filed a demurrer to the declaration which was overruled, and thereafter several pleas to the declaration to which demurrers were sustained, and having failed to file other pleas within the time allowed by the court, a default was entered against him on the rule day in October, 1892. Thereafter plaintiff's damages were assessed by a jury at $300, and on the same day, March 6, 1894, judgment was entered in favor of plaintiff for said sum, from which defendant sued out this writ of error.

We shall not attempt to give the pleadings in full, but confine ourselves to a brief statement of the facts alleged upon which errors are assigned in this court. It appears from the declaration that on November 21, 1887, in a suit instituted by defendant in error against one William Edgar in the Circuit Court of Hernando county, then in the Sixth Judicial Circuit, a writ of attachment was issued addressed to the sheriff of Sumter county (Sumter county being then in the Fifth Judicial Circuit), commanding him to attach and take into his custody and control so much of the lands, tenements, goods and chattels of said William Edgar as would be sufficient to satisfy John M. Reddick (the plaintiff), in a debt of $231.05 with costs of suit, and requiring him to have same before the judge of the Circuit Court for Hernando county at the court house in Brooksville on December 5, 1887, together with the writ. This writ duly came to the hands of plaintiff in error as sheriff of Sum-

ter county, and on November 25, 1887, he levied same upon an engine and boiler and certain other goods and chattels in Sumter county, endorsing a return of his levy upon the writ. On February 5, 1889, judgment was recovered by Reddick against Edgar in the suit pending in Hernando county for $250.88 and costs, upon which execution issued May 18, 1889, in ordinary form addressed to all and singular the sheriffs of the State. This execution duly came to the hands of plaintiff in error and the present action was instituted to recover damages for his alleged failure and refusal to levy same upon the attached property and collect by sale thereof.

One of the pleas filed by defendant, omitting formal parts was as follows: "That after the levy of the writ of attachment upon the property of said William Edgar as in plaintiff's declaration alleged, the said property being ponderous and difficult of removal by defendant, and being situated a considerable distance from the residence of the defendant, to-wit: about fifteen miles, the defendant put the same in the care and charge of one W. W. Hammack, of whose probity and diligence in the premises defendant was well satisfied, but that by some means and by some person or persons unknown to defendant the said property was removed between the time of the levy of said attachment and the coming into defendant's hands of the *fieri facias* in plaintiff's declaration mentioned, to some place unknown to defendant, and the whereabouts of which said property is still unknown to defendant; that more than a year elapsed from the levy of the said writ of attachment to the coming into defendant's hands of the said writ of *fieri facias*."

The plaintiff in error confines his argument in this court to his assignments of error based upon the rulings upon defendant's demurrer to the declaration, and plain-

tiff's demurrer to defendant's plea which we have just
quoted. The only point of law noted for argument upon
the margin of the demurrer to the declaration is that the
statute authorizing the issuance of the writ of attach-
ment is unconstitutional, and therefore void. Perhaps
the constitutional question does not properly arise upon
the demurrer to the declaration, but it does arise upon
the demurrer to the plea. We shall therefore proceed to
consider the constitutional question, and then the merits
of the plea as a defense.

I. The first, second and fourth sections of Chapter
3721, laws approved May 19, 1887, entitled "An act to
provide for the issuing and service of writs, process and
notices in civil suits and proceedings at law in certain
cases," provide as follows:

Section 1. That hereafter when in any civil suit or
proceeding at law in any of the courts of this State, for
any purpose whatever, the defendant, defendants, or any
one of them therein, resides or is in any county of this
State other than the one in which said suit or proceed-
ing is commenced or is pending, any writ, writs, process
or notices as authorized by law in civil suits or proceed-
ings, when the defendant or defendants reside in the
county where the suit or proceeding is commenced,
shall be issued and appropriately directed, and the sher-
iff or other proper officer of said county in which said
defendant, defendants or any one of them resides or may
be found, shall execute and serve such writs, process
or notices; and return thereof shall be made to the court
from which the same emanated, and such execution or
service and return shall be valid to all intents and pur-
poses, and the defendant or defendants so served legally
bound thereby; *provided, however,* that before any writ,
process or notice shall issue by virtue of this section,

Chapman v. Reddick.—Opinion of Court.

the plaintiff, or some one in his behalf, shall make affidavit before some officer of this State authorized to administer oaths that said suit or proceeding is, or was, instituted in good faith and with no intention on the part of the plaintiff or plaintiffs, as the case may be, to annoy or defraud said defendant or defendants.

Section 2. That hereafter, when in any proceedings in attachment in any of the courts of this State, the plaintiff, or some one in his behalf, shall, in addition to the affidavit now required in attachment proceedings, make affidavit that the defendant or defendants, or any one of them, has real or personal property in some county of this State other than the one in which said proceedings were instituted, a writ of attachment, original or ancillary, as the case may be, shall be issued and directed to the sheriff or other proper officer of said county where said property is, as aforesaid; and said officer shall execute said writ and hold the property levied on by virtue thereof subject to the order of the court from which said writ emanated, which said court shall have the power to order the delivery thereof to the sheriff or other propr officer of the county where the said proceedings were instituted, or order said officer so executing the writ to hold and dispose of the same in his county according to law, as in other cases. And when any real property is levied upon by virtue of this section, it shall be the duty of the officer levying said writ to file a written notice of said levy with the clerk of the Circuit Court for the county in which said property is situated, which notice shall contain a description of the property so levied upon, and the clerk shall record said notice in the book kept for the record of foreign judgments, for which he shall receive a fee of twenty-five cents, and said record shall be notice to all persons of said levy; and in

case of the dissolution of the attachment, or dismissal of the suit, or if for any cause the property ceases to be bound by said attachment, upon due proof thereof the clerk shall note such fact on the record of the levy.

Section 4. That nothing in this act shall authorize the bringing of any civil suit or proceeding at law in any other county than the one in which the property in litigation is, or in which the cause of action accrued. But when there is nothing local in the suit it may be brought in any county where the defendant or any one of the defendants, if there be more than one, shall reside.

Section 3 has reference to distress warrants, and section 5 simply repeals all laws in conflict with the provisions of the act.

The writ of attachment mentioned in the declaration was issued under the authority of section 2 of the above act, and as it issued from the Circuit Court of a county in the Sixth Judicial Circuit to the sheriff of a county constituting a part of the Fifth Judicial Circuit, to be there executed, the contention is that the act is void because it confers extraterritorial jurisdiction upon the Circuit Courts.

Section 2 of this act, with some changes in the language, has been carried forward as a part of section 1650 Revised Statutes of 1892, and substantial parts of sections 1 and 4 of the act became incorporated into sections 998 and 1014 Revised Statutes, which read as follows:

998. "Suits shall be begun only in the county (or if the suit is in a justice of the peace court in the justice's district) where the defendant resides, or where the cause of action accrued, or where the property in litigation is. If brought in any county or justice's district where the defendant does not reside, the plaintiff, or some person in

his behalf, shall make and file with the *praecipe* or bill in chancery, an affidavit that the suit is brought in good faith, and with no intention to annoy the defendant. This section shall not apply to suits against non-residents."

1014. "All process, except, that issuing from a justice of the peace court, shall be served by the sheriff of the county in which it is to be served. Process of a justice of the peace court may be served by a sheriff of the county or by a constable. In cases where the sheriff is interested, and in case of necessity, the judge of the Circuit Court may appoint an elisor to act instead of the sheriff. All writs or process issued, upon the institution of a suit which may be begun in a county where the defendant does not reside, and all writs, process or notices requiring service upon a defendant not in the county where the suit is pending, may be served by the sheriff of the county in which the defendant is to be found."

The case at bar arose prior to the adoption of the Revised Statutes, but other cases pending before us, originating after the adoption of those statutes involve the constitutionality of sections 998 and 1014, in so far as they permit summons *ad respondendum* to issue from a Circuit Court of one circuit to be served upon defendants in another circuit, in actions of assumpsit where the cause of action appears from the record to have arisen in the counties where the suits are brought, though none of the defendants are served in that county, or in the circuit in which that county is situated. The constitutional objections urged are the same as those suggested in the present case, and as we have considered all these cases together and reached the conclusion that the legislation attacked is within the legislative competency, we are disposing of the other cases without writ-

ten opinions, and shall state the reasons which impel us to the conclusion reached both as to the summons and the attachment, in this opinion.

By the constitution of 1885 the judicial power of the State is vested in the Supreme Court, Circuit Courts, Criminal Courts, County Courts, County Judges and Justices of the Peace (Sec. 1, Art. V). Section 8 of the same article provides that there shall be seven Circuit Judges, to be appointed by the Governor and confirmed by the Senate, who shall hold their offices for six years. The State shall be divided into seven judicial circuits, and one judge shall be assigned to each circuit. Such judge shall hold at least two terms of his court in each county within his circuit every year, at such times and places as shall be perscribed by law, and may hold special terms. The Governor may order a temporary exchange of circuits by the respective judges, or order any judge to hold one or more terms or parts of terms in any other circuit than that to which he is assigned. The judge shall reside in the circuit of which he is judge. Successors to the judges of the Circuit Courts in office at the ratification of this constitution shall be appointed and confirmed at the first session of the legislature after such ratification.

Section 9 fixes the salaries of the Supreme and Circuit Judges. Section 10 provides that "until otherwise defined by the legislature, the several judicial circuits of the State shall be as follows: the first judicial circuit shall be composed of the counties of," naming them, with like provisions as to each of the other judicial circuits.

Section 11 provides "the Circuit Courts shall have exclusive original jurisdiction in all cases in equity, also in all cases at law, not cognizable by inferior courts, and in all cases involving the legality of any tax, assess-

ment, or toll; of the action of ejectment and of all actions involving the titles or boundries of real estate, and of all criminal cases not cognizable by inferior courts; and original jurisdiction of actions of forcible entry and unlawful detainer, and of such other matters as the legislature may provide. They shall have final appellat jurisdiction in all civil and criminal cases arising in the County Court, or before the County Judge, of all misdemeanors tried in Criminal Courts, of judgements or sentences of any Mayor's Court, and of all cases arising before Justices of the Peace in counties in which there is no County Court; and supervision and appellate jurisdiction of matters arising before County Judges pertaining to their probate jurisdiction, or to the estates and interests of minors, and of such other matters as the legislature may provide. The Circuit Courts and judges shall have power to issue writs of mandamus, injunction, quo warranto, certiorari, prohibition, habeas corpus and all writs proper and necessary to the complete exercise of their jurisdiction."

Section 12 provides "the Circuit Court and Circuit Judges may have such extraterritorial jurisdiction in chancery cases as may be prescribed by law."

Section 14 authorizes a Circuit Judge to appoint in each county in his circuit one or more court commissioners, who are given power, in the absence from the county of the judge, to allow certain writs returnable before themselves or the Circuit Judge, and their orders are reviewable by the Circuit Judge.

Section 15 requires the Governor by and with the consent of the Senate to appoint a State Attorney in each judicial circuit, and requires that there be elected in each county a sheriff and a clerk of the Circuit Court.

Sections 19 and 20 authorize the selection of judges

9

*ad litem*, the transfer of causes and the appointment of referees in the manner therein specified.

It is urged upon us that these provisions of the constitution, particularly in view of section 12 quoted, and the rule of construction, *expressio unius est exclusio alterius*, limit the authority of each Circuit Court to the territory composed of the counties embraced within the circuit, and that in such territory the jurisdiction of each of the Circuit Judges is exclusive of all other Circuit Courts; that the issuance of process is the exercise of jurisdiction, and when issued beyond the territorial limits of the court, it becomes the exercise of extraterritorial jurisdiction within the meaning of the constitution.

In Sanchez v. Haynes, 35 Fla. 619, 18 South. Rep. 27, the first and fourth sections of the act of 1887 were construed, and it was there held that they only authorized the service of summons *ad respondendum* outside the county in which the suit was instituted, where the suit is properly brought in the county where the property in litigation is located, or in which the cause of action accrued, or where one of the defendants reside where there is more than one. In other words, that the statute did not pretend to give jurisdiction over a subject-matter as to which the court was before the act without jurisdiction, but gave authority merely to issue a writ beyond its territorial limits, but within the limits of the State, whereby to acquire jurisdiction over the person of the defendant and thereby enable it to exercise its rightful jurisdiction over the subject-matter. This construction of the statute is obviously correct and applies as well to the second as to the first section thereof, and to those sections of the Revised Statutes which we have quoted. The writ, whether summons *ad res.* or attachment, when sent and executed beyond the territorial limits of the

court issuing it, must, in order to be valid, be issued by a court having jurisdiction over the cause in which it is issued, either by reason of the accrual of the cause of action, the residence of the defendant or some of them, or because of the situation of property in litigation or attached on mesne process. In the Sanchez-Haynes case the entire record was before the court, from which it appeared that the cause of action was transitory; that the default and final judgment were both entered by the clerk and not by the judge, nor by his order, and this court found that there was nothing shown in the declaration or elsewhere in the proceeding to indicate that the cause of action accrued in the county where the suit was brought, while it did appear affirmatively that the defendant resided and was served beyond the limits of the circuit. It was accordingly held that the service of the writ was a nullity, not because of constitutional infirmaty but because it was not authorized by the statute. In other States we find statutes authorizing summons and writs of attachments to be issued to other counties, and the language of those statutes, or their uniform construction, confines their operation to cases where such writs are issued by courts having jurisdiction over the subject-matter of the action to enable them to fully exercise such jurisdiction. Sparks v. Beyer, 5 Kan. App. 721; Ellis v. State, 92 Tenn. 85, 20 S. W. Rep. 500; Porter v. Young, 85 Va. 49, 6 S. E. Rep. 803; Pendleton v. Smith, 1 W. Va. 16; Chase v. Ostron, 50 Wis. 640, 7 N. W. Rep. 667; Hinman v. Rusmore, 27 Ill. 509; Fuller v. Langford, 31 Ill. 248; Buck v. Coy, 73 Ill. App. 160; Carney v. Taylor, 4 Kan. 178-542; Huxley v. Harrold, 62 Mo. 516; Carter v. Arbuthnot, 62 Mo. 582; and particularly Laird v. Dickerson, 40 Iowa, 665; Kentzler v. Chicago, M. & St. P. Ry. Co., 47 Wis. 641,

3 N. W. Rep. 369; Kenney v. Greer, 13 Ill. 432, S. C. 54 Am. Dec. 439.

The Circuit Courts of this State are superior courts of general jurisdiction, and it requires no citation of authority to show that nothing is intended to be out of the jurisdiction of a superior court, except that which specially appears so to be. It is true that, as held in the Sanchez-Haynes case where the whole proceeding is before the court, and it affirmatively appears from the record that the default and final judgment were entered by a clerk upon a service perfected beyond the territorial limits of the court, and there is nothing in the record to indicate that the court had jurisdiction of the subject matter, this presumption is overturned. This results from the fact that the clerk in such cases acts in a ministerial capacity, as a mere agent of the law, and the facts authorizing him to act must, therefore, specially appear. But in this case there is nothing to show that the Circuit Court of Hernando county did not have jurisdiction of the person of the defendant and of the subject-matter of the action in which the attachment was issued, or to indicate that the clerk was without authority to issue the attachment, or that the judgment in that suit was not entered by the court, and the writ appearing to be fair and regular upon its face, we must presume that it was properly issued by a court having jurisdiction of the action and of the defendant, or of his property in that county by the levy of an attachment thereon. We are, therefore, required to decide whether the statute authorizing this writ to be issued by a court exercising its constitutional jurisdiction within its territorial limits, conferred extraterritorial jurisdiction upon the court.

A careful reading of the constitution fails to show that it anywhere expressly or impliedly gives to any

particular Circuit Court jurisdiction over particular persons. It grants exclusive original jurisdiction generally to the Circuit Courts of all cases in equity, and all cases at law, not cognizable by inferior courts, and then specifically of all cases involving the legality of any tax, assessment or toll, of the action of ejectment and all actions involving the title or boundaries of real estate, and original jurisdiction of actions of forcible entry and unlawful detainer, and of such other matters as the legislature may provide. It speaks of cases and actions, and not of persons, showing clearly a design to grant jurisdiction of certain subject-matters, but with no express or implied prohibition upon the powers of the legislature to provide process to enable them to exercise the jurisdiction conferred, by requiring persons in distant parts of the State to appear and defend actions rightfully instituted in Circuit Courts held in other parts of the State. The expression "extraterritorial jurisdiction" used in section 12, Article V, must be construed in connection with the term "jurisdiction" in other sections of the same article; and so construed it is clear that it has no reference to persons, so as to prohibit the legislature from authorizing process to reach the person of a defendant anywhere within the limits of the State. Our State constitution is a limitation upon power; and unless legislation duly passed be clearly contrary to some express or implied prohibition contained therein, the courts have no authority to pronounce it invalid. Sharpless v. Mayor of Philadelphia., 21 Pa. St. 147, S. C. 59 Am. Dec. 759; State *ex rel.* Thompson v. McAllister, 38 W. Va. 485, 18 S. E. Rep. 770; Cotten v. County Commissioners of Leon county, 6 Fla. 610. While constitutional jurisdiction can not be restricted or taken away, it can be enlarged by the legislature in all cases where such

enlargement does not result in a diminution of the con-
stitutional jurisdiction of some other court or where
such enlargement is not forbidden by the constitution.
State *ex rel.* Florida Publishing Co. v. Hocker, 35 Fla.
19, 16 South. Rep. 614; Harris v. Vanderveer, 21 N. J.
Eq. 424. It certainly can not for a moment be pretended
that it interferes with the jurisdiction of any court to
authorize another court of the same State to require one
domiciled within the territorial limits of the former, to
appear and defend a suit properly instituted in the latter.
The courts are merely agencies of the same sov-
ereignty established for administering justice, and there
is nothing in the constitution which forbids the sover-
eign, through the legislative department, requiring every
person domiciled within its jurisdiction to appear and
submit to an adjudication of his rights in any judicial tri-
bunal of the State which has power under the constitu-
tion to adjudicate them. It is true that at common
law no court, even if it had jurisdiction of the subject-
matter, could send its process beyond its territorial lim-
its without express legislative authority. And this rule
of the common law was of force in this State, so that
prior to the enactment of the statute of 1887 no court
could (except in special cases) send its process beyond
its territorial limits, but this result was not caused by any
prohibition in the constitution, but by the rule of the
common law mentioned. The legislature has seen fit to
give the authority, and to that extent have repealed the
common law, and it is not perceived why the legisla-
ture can not repeal any common law rule not embedded
in the constitution, or secured from repeal by that instru-
ment. In State v. Jacksonville, Pensacola & Moblie
Railroad Co., 15 Fla. 201, text 284, it was held that,
without legislative authority, a Circuit Court could not,

through its own receiver take possession of property situated beyond its territorial jurisdiction.   This conclusion was reached by the application of the common law principle above stated.   The court there expressed a doubt if the legislature could constitutionally authorize such process, but the point was not decided.   In the case of State v. Jacksonville, Pensacola & Mobile Railroad Co., 16 Fla. 708, text 722, it was held that the Circuit Court if it had jurisdiction of the parties could establish the rights in and declare or define liens upon property in another circuit, though it could not decree a sale by its own officers of such property.   In the case cited from 15 Fla. 201, text 284, a decision from the Supreme Court of Arkansas was relied upon as sustaining the conclusion reached, and the constitution of that State organizing its Circuit Courts was very much like our constitution of 1868.   In a subsequent case, Tucker v. Real Estate Bank, 4 Ark. 431, it was held that the legistature possessed the power to authorize process from the Circuit Court of one county to run into another county, and be executed there; and in a later case the same court affirmed the power of the legislature to enact a statute providing that "where a defendant in a suit instituted by attachment has property in several counties, separate writs of attachment may be issued to each county."   See, also, Hickman v. O'Neal, 10 Cal. 292; American Loan & Trust Co. v. Bond, 91 Wis. 204, 64 N. W. Rep. 854; Ellis v. State, 92 Tenn. 85, 20 S. W. Rep. 500.   Our statutes authorizing the attachment, does not undertake to transfer to another Circuit Court any subject-matter of litigation properly belonging to the court into whose territorial limits such process is authorized to run and be executed.   It goes no further than to authorize the court by its process to fasten a lien upon real estate, or to se-

cure custody of personal property situated in such other circuit to answer the judgment to be obtained in the suit in which its process is issued. Its purpose is to give each of the Circuit Courts power to exercise fully and completely their legitimate constitutional jurisdiction by means of process returnable to any part of the State, and we find nothing in the constitution which expressly or impliedly prohibits the legislature from giving them authority to issue such writs in aid of and to enforce their rightful jurisdiction. Some courts affirm the incidental jurisdiction in broad terms (Favrot v. Piane, 4 La. Ann. 584; Kahn v. Sippili, 35 La. Ann. 1039; Webb v. Wright, 2 Bush (Ky.), 126; Tinsley v. Savage, 50 Mo. (141), and the powers of the legislature to confer it even when it withdraws from that of another court (Hunt v. Potter, 58 Miss. 96; Wright v. Ware, 50 Ala. 549; Dunbar v. Frazer, 78 Ala. 529), but we assume, without deciding the direct question that the legislature can not in this State grant authority to one Circuit Court to issue extraterritorial writs of any kind for the purpose of acquiring jurisdiction of a case wherein the cause of action did not accrue and the defendant or defendants if more than one do not reside within its territorial limits or wherein the property in a local action is situated beyond its territorial limits. But where the writ merely enables the court to fully exercise its rightful jurisdiction, by giving notice to the party defendant, or by securing his property or a lien thereon, as an auxiliary, incidental or conservatory measure in suits wherein the court has jurisdiction over the subject-matter of the action, granted by the constitution, we think the legislature has the power to authorize its execution in any part of the State, and that the exercise of such power does not confer extraterritorial jurisdiction upon the Circuit

Courts in violation of any express or implied prohibition in the constitution.

II. The law is that where an officer places attached property in the hands of another person for safe keeping without the consent of the plaintiff in attachment, he is liable for the failure of such other person to exercise ordinary care to preserve it, and if the property is lost or stolen by reason of the failure of such other person to exercise such care, the officer will be liable to the plaintiff in attachment after such plaintiff has obtained a valid judgment preserving the attachment lien for the value of the attached property, not to exceed, however, the amount of his judgment. Drake on Attachment, §294; Waples on Attachment and Garnishment, §971; Wade on Attachment, §230; 2 Freeman on Executions, §270. The plea in this case did not allege that Hammock exercised any care whatever to preserve the property levied upon. It did not allege that the property was not lost or removed by reason of a failure to exercise ordinary care. It alleged only that defendant placed the property in charge of a person "of whose probity and diligence defendant was well satisfied," and that the property was removed by some unknown person to some unknown place. These allegations were insufficient to relieve the defendant from liability, and the demurrer to the plea was properly sustained.

The judgment of the Circuit Court is affirmed.