ISAAC N. JONES, *Ex parte.*

APPLICATION *for Writ of Injunction.*

The writ of injunction is a judicial writ.

The Supreme Court possesses no constitutional power and authority to issue any other writs than those expressly enumerated in that clause of the Constitution which provides that " the Supreme Court shall have power to issue writs of error and supersedeas, certiorari and habeas corpus, mandamus and quo warranto, and other remedial writs, and to hear and determine the same ;" or such as are necessarily implied in that enumeration.

This clause limits the Supreme Court, in the exercise of *original* jurisdiction, to cases to which the writs therein *specially* enumerated would apply ; and the power to issue " other remedial writs," embraces only such other writs as may be properly used in the exercise of appellate powers, or the power of control over inferior or other courts, expressly granted by the Constitution.

The power to issue writs of injunction, to stay proceedings at law, is not conferred upon the Supreme Court, by the expression " other remedial writs," used in this clause of the Constitution.

The Supreme Court can issue no writ which it cannot also hear and determine : and, therefore it can issue no writ of injunction.

Nor can the Supreme Court derive any authority by implication to issue a writ of injunction from the provisions in the Constitution, that " it shall have a general supervising control over all inferior and other courts of law and equity."

The object of this provision was to prevent a conflict of jurisdiction among the several judicial tribunals which might otherwise arise and endanger the entire plan and form of the government.

The Supreme Court, possessing the attributes of supremacy, must and does possess the power to govern, and to enforce its own authority and decrees : and if the writs enumerated in the Constitution, are not sufficient for that purpose, it may frame new ones, to cause its mandates to be respected and obeyed.

When the Supreme Court has once prescribed the rule of action on any given question, the rule itself, being sovereign and supreme, must be implicitly followed and obeyed by all the inferior judicial tribunals. To disobey or question its authority would be to commit a clear and palpable violation of Constitutional duty.

But before the Supreme Court can lay down any governing rule of action for the inferior and other courts of law and equity they must either have acted, or positively refused to act. The Supreme Court cannot act in advance of the other tribunals.

The Circuit Courts have the whole original chancery jurisdiction in the State. Issuing a writ of injunction is a proceeding in chancery, and the Supreme Court can issue no such writ, without assuming and exercising a portion of the chancery jurisdiction allotted to the Circuit Courts.

Where jurisdiction is given to the Supreme Court, the practice may be regulated and prescribed by the Legislature ; but the Constitutional existence, organization, and jurisdiction of that court can, in no essential point or manner, be changed or altered by the Legislature.

The act, therefore, which gives to the Supreme Court the power to grant writs of injunction to stay waste and proceedings at law throughout the State, is a clear and palpable violation of the Constitution, and therefore null and void.

This was an application for a writ of injunction to stay certain pro-ceedings at law in Lafayette Circuit Court. The matter having been decided on the Constitutional question as to the power of the court to grant the writ, it is unnecessary to state the facts set up in the bill.

LACY, *Judge,* delivered the opinion of the Court:

This is an application to the Supreme Court to issue a writ of in-junction. At a previous day of the present term, the complainant Isaac N. Jones exhibited his bill in chancery to be relieved of a judg-ment at law obtained against him by James W. Irwin, endorsee of James Giles, in the Lafayette Circuit Court, and he claimed to be en-titled to the benefit of a writ of injunction, to stay the proceedings, by virtue of an act of the General Assembly, approved March 5, 1838, which declares that the Supreme Court, or any Judge thereof in vacation, shall have power to grant injunctions to stay waste and proceedings at law throughout the State. *Rev. Stat. p.* 452. It is admitted that this act confers upon the Supreme Court the power to grant writs of injunction in a case properly made out; provided, it be constitutional. And the question now is, as to the constitutionali-ty of the act under consideration. On one hand it is contended it is constitutional. On the other it is asserted to be a clear and palpable violation of the Constitution. Its constitutionality, or its unconstitu-tionality, we will now proceed to discuss and determine. Before, however, we do so, it is proper to determine the nature and character of a writ of injunction, and the objects and purposes to which it is generally applied. An injunction is a judicial writ, issued out of a court of chancery, for the purpose of staying waste or oppressive and unjust judgments at law. The party applying for it must show some equitable circumstance which will entitle him to the benefit of the writ: and that consists generally, if not universally, in the fact that a court of law has no jurisdiction of the case; or that if it has jurisdic-tion, it cannot administer full, certain and adequate relief. When these facts are established to the satisfaction of the Chancellor, he is empowered with authority, as the party is remediless at law, to make an order to stay the judgment and proceedings therein had, so that a

Isaac N. Jones, *ex parte.*

a court of equity can take cognizance of the case, and decree equitable and complete redress in the premises.

The Constitution, in establishing and organizing the Supreme Court, declares " that it shall have appellate jurisdiction only, co-extensive with the State, and under such restrictions and regulations as may from time to time be prescribed by law. It shall have a general supervising control over all inferior courts of law and equity. It shall have power to issue writs of error and supersedeas, certiorari and habeas corpus, mandamus and quo warranto, and other remedial writs, and to hear and determine the same. *Art.* 4, *sec.* 2. *Const. Rev. Stat. p.* 33. Here, then, the powers of the Supreme Court are given, limited, and defined; and to the exercise of the powers thus granted and specified, they are expressly confined by the Constitution. They can neither enlarge or diminish their constitutional power or jurisdiction by a fair and just construction of the grant expressly or impliedly. They cannot refuse to take cognizance of the particular class of cases assigned to them by the Constitution, nor can they assume any jurisdiction incompatible with its paramount authority and will. The obligation to exercise a jurisdiction that is conferred, and to refrain from exercising it where it is denied, is of equal obligatory force. By an analysis of the powers conferred upon the Supreme Court, as prescribed by the Constitution, it will be readily perceived that all its constitutional jurisdiction, as derivative from the grant of its creation, and nearly all of its powers, are strictly of an appellate character. The Convention first designed to make it what in truth it is—a Court of Error and of Appeals, whose practice might be regulated and prescribed by Legislative enactments; but whose constitutional existence, organization, and jurisdiction, could in no essential point or manner be changed or altered by the Legislature. This proposition seems to our minds to be clearly deducible, not only from the particular clause of the Constitution we are now considering, but from the general frame and nature of the government itself, as organized and established by the Convention. Then, it clearly follows, from these plain and obvious principles, that the Supreme Court possesses no constitutional power and authority to issue any other writs than those expressly enumerated and

embraced in the Constitution, or such as are necessarily implied and contained in that enumeration. It certainly cannot be pretended that the writ of injunction is included in that enumeration, for the express terms and words of the grant, conclusively negative any such idea. Is it then impliedly embraced in the clause in question? This clause has been fully examined, and its meaning ascertained and declared, in the case of *the State vs. Chester Ashley and others,* on a motion for information in the nature of a quo warranto. The Chief Justice, in delivering the opinion in that case, holds the following explicit and emphatic language; " We will now examine what jurisdiction or power this court can derive from the terms 'other remedial writs,' as used in the Constitution. The terms here used are general, and their application is left indefinite. Did the Constitution intend thereby to authorize the court to issue every writ of a remedial nature known to the laws, and to hear and determine the same? If they did, their declaration that the court shall have appellate jurisdiction only, " except in cases otherwise directed by this Constitution," as well as their special grant of power to issue certain enumerated writs, each of which is of a remedial nature, is wholly unmeaning, if not positively absurd. And, besides that, it would produce a direct conflict of authority between the several judicial tribunals, and involve them in the utmost confusion. It would destroy every vestige of harmony in the whole system, and virtually repeal every other grant of judicial power made by the Constitution. It would draw to this forum original jurisdiction co-extensive with the State of every *civil* controversy; for it must be observed that in respect to the sum or amount involved, there is no restriction whatever imposed by the Constitution in any cause in which the court can exercise original jurisdiction : therefore, if it can, under any authority derived from this general grant, take original jurisdiction of any case, it may of all cases falling within the same general class. These consequences are clearly not within the objects and intention of the Convention, but in opposition to both. And it is a rule founded on the dictates of common sense, and admitted by all jurists, that in construing a Constitution or fundamental law of Government, no construction of a given power is to be allowed, which plainly defeats or impairs its avowed objects. If, therefore, the words

Isaac N. Jones, *ex parte.*

are fairly susceptible of two interpretations according to their common sense and use, one of which would defeat one, or all, of the objects for which it was obviously given, and the other of which would preserve and promote all; the former interpretation ought to be rejected, and the latter to be held the true interpretation.

The terms, " other remedial writs," as before remarked, are indefinite in themselves, and may embrace a greater or less number in proportion to the object and purposes to which they are intended to be applied; and they might be applied to almost every purpose, with the single qualification that it shall be in a proceeding of a remedial nature, as contra-distinguished from proceedings of a criminal or penal character; which, by the language used, are expressly included. The terms used must, therefore, receive such a construction as will promote, rather than defeat, the objects of the grant, or the general objects of the Convention. The context, and every other part of the whole instrument, which relates to the organization of the judiciary, and the distribution of the judicial power must be looked to in determining the power given by the general indefinite grant. These have all been carefully and critically examined by the court, and from them it appears satisfactorily, that it was the intention of the framers of the Constitution to limit and restrict the Supreme Court in the exercise of original jurisdiction to such cases as the writs therein specially enumerated would apply, and that the power to issue other remedial writs, intended to embrace only such other writs as might be properly used in the exercise of appellate powers, or the power of control over inferior or other courts, expressly granted by the Constitution. And such, in every point of view in which they can be considered, is, in the opinion of this court, the only legitimate, true, consistent, sensible, and practicable interpretation which they can receive." If the principle here laid down be true, and that it is we have not the least doubt, then the power to issue a writ of injunction to stay proceedings at law is certainly not conferred upon the Supreme Court by the terms " other remedial writs," used in the Constitution. We have certainly no power to issue any writ that we cannot, after its emanation, try and determine, for the words of the Constitution are explicit and peremptory upon the point. After the enumeration of the writs prescribed

13

by the instrument, the Constitution declares " that the Supreme Court shall have power to hear and determine the same." We cannot issue any writ without having jurisdiction to try the same; for, if we could, then we would be at liberty wholly and totally to disregard the latter part of the section, and consider it a mere nullity. This we have no right to do, without violating the first and primary rules of all just and fair interpretation. The whole clause, or section, must be taken together and made to stand, if they are not irreconcilably opposed to each other. This is a maxim of the common law in the construction of all legal instruments. Suppose, for example, we should issue the writ now applied for, could we then take cognizance of the cause, and try the matter in dispute between the parties. If so, the Supreme Court can draw to themselves all original jurisdiction in cases where injunctions would lie, and thus, by this simple and easy process, they would be enabled to oust the Circuit Courts of all original chancery jurisdiction, which is expressly given to it by the Constitution, until otherwise prescribed by law. This, it is evident, would be a clear and palpable violation of the Constitution, reaching and abrogating the letter and spirit of the instrument, and its general objects and designs. Let us see now whether the power to issue the writ now applied for, is impliedly included in the terms " the Supreme Court shall have a general and superintending control over all inferior and other courts of law and equity." What, then, is the true construction to be put upon these terms? The object of inserting them is obvious and manifest. It was to prevent a co-existent *conflict* of jurisdiction among the several distinct judicial tribunals which might, otherwise, arise and endanger the entire plan or form of the government. The Convention clothed the Supreme Court with all the necessary power that was requisite to combine the subordinate parts, in order to enable them to maintain a concert of co-operation, and a harmony of action, throughout the entire judicial system.

This principle they deemed highly important, and every way essential for the maintenance of constitutional liberty and the due administration of public justice. Hence, the Convention gave them, by express grant, a supervising control over all inferior courts of law and equity. As the court of error and appeals possesses the attribute of

Isaac N. Jones, *ex parte.*

supremacy in the system, of course, it must, and does have, power to govern, and to enforce its own authority and decrees. If the writs enumerated in the Constitution are not sufficient for that purpose, it may form any new one to cause its mandates to be respected and obeyed, and when it has once prescribed the rule of action on any given question, the rule itself being sovereign and supreme, must be implicitly followed and obeyed by all the inferior judicial tribunals. To disobey or question its authority, would be to commit a clear and palpable violation of constitutional duty. Before, however, the Supreme Court can lay down any governing rule of action for the inferior and other courts of law and equity, they must have either acted on the subject, or have positively refused to act. They must first have done some unlawful, illegal act, or they must have omitted, either rightly or wrongfully, to have acted at all. The Supreme Court cannot act in advance of the action of the inferior tribunals, for, if it could, it might assume, by indirection, a constitutional jurisdiction not warranted by the instrument, but expressly forbidden by its will. Whenever the inferior courts have first acted, then their action, if erroneous, is liable to be revised and corrected by the Supreme Court. If these positions be true, then the Supreme Court can derive no authority, by implication, to issue writs of injunction, from the terms "they shall have a general superintending control over all inferior and other courts of law and equity," as used in the Constitution.

This view of the subject is strengthened and fully sustained by the sixth section of the seventh article of the instrument, which declares, " until the General Assembly shall deem it expedient to establish courts of chancery, the Circuit Courts shall have jurisdiction in matters of equity, subject to an appeal to the Supreme Court, in such manner, as may be prescribed by law." The Legislature has not thought proper, as yet, to establish courts of chancery; and, of course, the Circuit Courts still retain primary jurisdiction in matters of equity, subject to an appeal. It surely cannot be denied, that issuing a writ of injunction is a matter in equity or chancery proceeding; then, if it is such a proceeding, it belongs by constitutional grant, in the first instance, and primarily, to the Circuit Courts and, consequently, the Supreme Court cannot assume or exercise any portion of the constitutional

jurisdiction assigned to those tribunals, without a clear and manifest violation of the instrument. These principles we regard as fundamental, for they lie at the very foundation of the whole judicial system, and they cannot be departed from without putting in imminent hazard our entire plan or form of government. Considerations like these have induced this court to be extremely cautious in assuming original jurisdiction in doubtful cases, or in such as were not expressly or clearly included in the grant of the Constitution. If the principles we have laid down be correct, then it necessarily follows, that the act of the Legislature, giving to the Supreme Court power to grant injunctions to stay waste and proceedings at law, is a clear and palpable violation of the Constitution, and therefore null and void. The Constitution of our State is the supreme paramount law, unless it be repugnant to the Constitution of the United States; and, therefore, any legislative acts or provisions inconsistent with its authority, and irreconcilable with its will, must be taken and held for nought. This being the case, the application for the writ must, therefore, be dismissed without prejudice or costs.