EX PARTE A. C. GINNOCHIO.

*No. 3914.   Decided December 22.*

1.  **Sale of Liquor on Sunday—Municipal Regulation of, Under Charter— Exclusive Jurisdiction of City Court over Such Offenses—Constitutionality of Charter.**—By the provisions of the municipal charter of the city of Fort Worth authority was granted to the city council "to close drinking houses, saloons, etc., where intoxicating liquors are sold, on Sundays." By an amendment of said charter it is further provided, that "the judicial power of the city of Fort Worth shall be and the same is hereby vested in a court to be known as the Fort Worth City Court, to be presided over by a judge to be known as the city judge, which court is hereby created and established, with a criminal jurisdiction as follows: 1. To try and punish all misdemeanors of which the Recorder's Court now has jurisdiction. 2. To try and punish all misdemeanors arising under the provisions of this charter; to have concurrent jurisdiction with the State courts over all misdemeanors against the laws of the State committed within the city limits, etc.; and to have exclusive jurisdiction over any violation of the Sunday laws between the hours of 12 o'clock Saturday night and 9 o'clock Sunday morning, and between the hours of 4 p. m. Sunday and 12 o'clock Sunday night." *Held:*

1.   That the power to "close," as above granted, does not confer exclusive jurisdiction by ordinance to regulate, control, and prohibit the traffic of liquor on Sunday, within the limits of said city, so as to supersede and prevent the operation and enforcement of the State laws by the State courts within the limits of said city.

2.   That that portion of the city charter above quoted which attempts and purports to confer exclusive jurisdiction upon the Fort Worth City Court of all violations of the Sunday law within the city limits between the hours of 12 o'clock Saturday night and 9 o'clock Sunday morning, and between the hours of 4 p. m. on Sunday and 12 o'clock Sunday night, is unconstitutional and absolutely void, in that it attempts a divestiture or destruction by the Legislature of the power and jurisdiction of Justice Courts created and provided for by the State Constitution.

2. **Same.**—See opinion for a discussion *in extenso* of the power of the legislative branch of the government to interfere with, nullify, abridge, abrogate, or withdraw from the judicial department of the government any of its functions, power, authority, and jurisdiction conferred by the Constitution. ·

3. **Justice Courts.** — Justice Courts are creatures of the Constitution, of equal standing with the Legislature as to origin and creation, and it is beyond the power of the Legislature to withdraw or destroy their jurisdiction and confer the same upon municipal courts.

APPEAL from the County Court of Tarrant. Tried below before Hon. W. D. Harris, County Judge.

Appellant was convicted in the Justice Court for selling intoxicating liquors in the city of Fort Worth between the hours of 4 o'clock p. m. Sunday and 12 o'clock Sunday night, on said Sunday, the 26th day of July, 1891; and refusing to pay the fine imposed by said justice, was arrested on a *capias pro fine;* whereupon he sued out a writ of *habeas corpus* before the county judge, upon the ground that the justice's judgment of conviction was void, because said justice had no jurisdiction over said offense committed at said time and place, inasmuch as by the provisions of the charter of the city of Fort Worth exclusive jurisdiction over such offenses was conferred upon and lodged in the "Fort Worth City Court," presided over by the "city judge." On the hearing of the writ of *habeas corpus* the county judge held that the applicant was not illegally restrained of his liberty, and remanded him into custody. It is from that ruling that this appeal is prosecuted.

*Capps & Canty, Field & Davis, J. H. Jackson,* and *Bowlin & Bowlin,* for appellant, filed a printed brief containing the following propositions and authorities, viz.:

"The only question in the case being the constitutionality of the city charter of the city of Fort Worth, wherein exclusive jurisdiction is conferred upon the City Court of said city over violations of the Sunday laws committed in said city during or between the hours as above stated, it is respectfully submitted that said charter in said respect is constitutional and valid, and that the Legislature had the power under the Constitution to take the jurisdiction away from the Justice Courts, in whole or in part, of said city of Fort Worth, over violations of the Sunday laws, and confer it upon a municipal court therein created. In support of this proposition appellant submits:

"1. The Legislature had the power under the Constitution to grant the city of Fort Worth a special charter as a city containing more than $10,000 inhabitants, and to create a court therein and give it a jurisdiction. Const. 1876, art. 3., sec. 1; Id., art. 11, sec. 5; Ex Parte Wilson, 14 Texas Ct. App., 592; Corey v. The State, 28 Texas Ct. App., 490; Special Charter City of Fort Worth, Acts 21st Leg., and sec. 164a, pro-

viding that courts shall take judicial notice of same; amendments Special Laws, 22d Leg., sec. 26.

"2. If not prohibited by the Constitution, either by express terms or necessary implication, the Legislature has the power to suspend the operation of the State laws as relates to misdemeanors, either in whole or in part, within municipalities, and to take the jurisdiction away from State courts in such cases and confer it upon municipal courts. Davis v. The State, 2 Texas Ct. App., 425; Cool. Const. Lim., 3 ed., sec. 198; 1 Dill. Mun. Corp., 2 ed., sec. 54; Id., 3 ed., sec. 87, and notes; Perrit v. Pearce, 42 N. W. Rep., p. 1000; Craddock v. The State, 18 Texas Ct. App., 567; Flood v. The State, 19 Texas Ct. App., 584.

"3. The Constitution of 1876 of the State of Texas does not, either by express terms or necessary implication, prohibit the Legislature from taking away the jurisdiction of the Justice Courts and conferring same on municipal courts of cities containing more than 10,000 inhabitants. Const. 1876, art. 5, secs. 18, 19; Id., art. 11, sec. 5; Id., art 3, sec. 56; Ex Parte Wilson, 14 Texas Ct. App., 592; March v. The State, 44 Texas, 64; Corey v. The State, 28 Texas Ct. App., 490; Bish. Stat. Crimes, 2 ed., 112a, 112b."

In addition to the above authorities cited, they also filed a printed argument in support of their positions.

*R. H. Harrison*, Assistant Attorney-General, for the State, filed the following brief, which, it will be seen upon an inspection of the opinion of the court, was adopted as part of the opinion of the court in the case, viz.:

Appellant was convicted in Justice Precinct No. 1, of Tarrant County, Texas, for selling intoxicating liquors in violation of the Sunday laws of the State.

Appellant sued out a writ of *habeas corpus* before the county judge of said county, and asked to be discharged from custody, upon the ground that the Justice Court had no jurisdiction to hear and determine the accusation against him, and therefore its judgment of conviction was void. Appellant alleges in his application for the writ that the offense was committed on Sunday, between the hours of 4 o'clock p. m. and 12 p. m., and that the City Court of the city of Fort Worth, by virtue of the charter of said city, granted by special act of the Legislature, had exclusive jurisdiction over violations of the Sunday laws committed between said hours.

The city of Fort Worth was chartered by special act of the Legislature, approved March 29, 1889, and the amendment thereto, April 3, 1891. By section 164a of said charter, courts of the State are required to take judicial notice of its provisions.

The provisions of the charter bearing upon the question under consideration are to be found in section 56 of the charter as originally

granted and section 26 of the charter as amended. By section 56 of the original charter, it is provided that the city council shall have power "to close drinking houses, saloons, bar rooms, beer saloons, and all places or establishments where intoxicating or fermented liquors are sold, on Sundays, and also places of amusement and business;" and by section 26 of the amended charter, it is further provided: "The judicial power of the city of Fort Worth shall be and the same is hereby vested in a court to be known as the 'Fort Worth City Court,' to be presided over by a judge to be known as 'city judge,' which court is hereby created and established with a criminal jurisdiction as follows: 1. To try and punish all misdemeanors over which the Recorder's Court of Fort Worth now has jurisdiction. 2. To try, determine, and punish all misdemeanors arising under the provisions of this charter; to have concurrent jurisdiction with the State courts over all misdemeanors against the laws of the State committed within the city limits except theft, swindling, aggravated assault, aggravated assault and battery, keepers or exhibitors of such games as are prohibited by law, and matters involving official misconduct; and to have exclusive jurisdiction over any violation of the Sunday laws between the hours of 12 o'clock Saturday night and 9 o'clock Sunday morning, and between the hours of 4 p. m. Sunday and 12 o'clock Sunday night."

Appellant's contention is, in substance, that the city of Fort Worth and its court have exclusive jurisdiction over offenses against the Sunday laws committed between the hours named in appellant's application for the writ. The correctness of this proposition depends upon the construction and effect to be given to the above sections in connection with the Constitution and general laws of the State; and to sustain it, it is necessary to hold that the Legislature has by said acts of incorporation delegated to and vested in the city of Fort Worth exclusive jurisdiction, by ordinance, to regulate, control, and prohibit the sale of intoxicating liquors on Sunday, and the exclusive power to prescribe the hours of sale, and vesting in its court exclusive jurisdiction to enforce observance of such ordinances passed in pursuance thereof.

It is a familiar rule of construction, applicable alike to all corporations, municipal or private, that their charters are to be construed strictly against the corporations, and that they possess only such powers and jurisdiction as are expressly delegated in their charters, and such implied powers as are necessary to the proper exercise of those expressly delegated; and that whenever a doubt arises as to whether a particular power or jurisdiction has been granted, the doubt will be resolved against the grant and in favor of the grantor.

The inquiry therefore arises, has exclusive jurisdiction been conferred upon the city in the premises? As above observed, the only provisions of the charter bearing upon this subject are to be found in

sections 56 and 26—the former relating to the legislative powers of the city, and the latter to the judicial. Considering the legislative first, it will be seen that the language of section 56 is general in its terms, and can not possibly, by any rule of construction known to the books, be held to grant exclusive power or jurisdiction over the subject matter therein treated. In the cases of Bohmy v. The State, 21 Texas Court of Appeals, 597; Flood v. The State, 19 Texas Court of Appeals, 584; and Angerhoffer v. The State, 15 Texas Court of Appeals, 613, this court, in passing upon charters containing similar provisions, held that the same conferred no exclusive jurisdiction or power upon the city, but that all ordinances passed by the city in pursuance of such charter provisions were subordinate to the general laws of the State upon the same subject, and when in conflict therewith were nugatory and void. Therefore it may be considered that the question is settled in this State, so far at least as the decisions of this court are concerned, that such charter provisions do not confer exclusive jurisdiction upon the cities whose charters contain them. The Flood case is particularly strong against the proposition of exclusive jurisdiction. There the charter provisions under consideration not only conferred upon the city the power of closing saloons and drinking houses on Sunday, but also authorized the city to fix the hours for closing the same; and yet the court held this vested no exclusive jurisdiction in the premises, and that the city could fix no hours for closing in derogation of the general law, or rather short of those fixed by the general laws of the State, which, in legal effect, were from 12 o'clock Saturday night until 12 o'clock Sunday night.

In the provision under consideration, the city of Fort Worth is simply given the power to close drinking houses, saloons, etc., on Sunday. The conclusion, therefore, must be that the charter of the city of Fort Worth vests in it no exclusive power or jurisdiction by ordinance to regulate, control, and prohibit the traffic in liquor on Sunday within the corporate limits of said city, so as to supersede or prevent the operation and enforcement of the State laws within said limits.

Having reached this conclusion as to the legislative power, the next inquiry which presents itself is, does the charter confer upon the City Court exclusive jurisdiction to try and determine all offenses against the Sunday law committed within the limits of said city, whether arising under the State law or municipal ordinance; and if so, is such provision constitutional? The language of the charter upon this subject is not at all clear as to its real meaning and intent. It provides that said court shall have exclusive jurisdiction; but over what, it does not clearly appear. Assuming, for the sake of argument, that it was the purpose and intention to confer exclusive jurisdiction upon the City Court over offenses committed between said hours, whether against the city ordinance or against the general laws of the State, the question still recurs

whether the Legislature can divest the justice of the peace of his jurisdiction in the premises, and confer the same upon the City Court.

The Constitution of the State, so far as the power of the Legislature is concerned, is the supreme law of the land,·and no act of the Legislature in contravention of its provisions can be upheld or enforced.   By section 19, article 5, of that instrument, justices of the peace are given jurisdiction in all criminal cases where the penalty or fine is not more than $200.   By article 186 of the Penal Code the penalty for a violation of the Sunday law is fixed at a sum not less than $20 nor more than $50. Therefore it may be seen that justices of the peace have jurisdiction under the Constitution to try offenses against the Sunday laws of the State, and unless the Legislature has the power to transfer this jurisdiction to another court, and thereby prohibit its exercise by the Justice Court, these provisions of the charter must fall to the ground, as being in contravention of the section and article of the Constitution above cited.

While it is true the Legislature has all power the exercise of which is not inhibited to it by the Constitution, it is also equally true that when the Constitution creates a tribunal and confers upon it certain powers and jurisdiction, the Legislature, in the absence of express constitutional authority, has no power to limit or abridge the powers and jurisdiction so conferred.   And with respect to the matter under consideration, it has been held by the Supreme Court of this State, in the case of Ex Parte Towles, 48 Texas, 414 (Chief Justice Roberts delivering the opinion of the court), that "it was the object of the framers of the Constitution to mark out a complete judicial system, defining generally the province of each of the courts, by reference to the objects confided to the action of each, and the relation of each to the others. Such a system can not be changed by action of the legislative department, except when the power to make the change is conferred by the Constitution itself."   This decision seems to be decisive of the question under consideration, and, is as applicable to the provisions of the Constitution prescribing the powers and jurisdiction of the Justice Courts as it is to those relating to the District Courts.

The case of Corey v. The State, 28 Texas Court of Appeals, 490, cited in appellant's brief, has no application to the question here presented and now under consideration; for, with respect to jurisdiction of County Courts, it is expressly provided by section 22 of article 5 of the Constitution, that the Legislature shall have power by local or general law to increase, diminish, or change the civil and criminal jurisdiction of County Courts, and in cases of such change to conform the jurisdiction of other courts thereto.   No such provision is found relative to the jurisdiction conferred upon Justice Courts; therefore the powers and jurisdiction conferred upon them are surrounded by the same safeguards and limitations upon legislative control or interference as are

thrown around the jurisdiction conferred upon the district and higher courts of the State.

Again, considering section 26 as a whole, it was evidently the intention of the Legislature to create a kind of criminal court whose jurisdiction should be coextensive with the limits of the city, concurrent in some respects, while in others exclusive as to offenses, not only against the city ordinances, but also against the laws of the State. The validity of this provision may also be seriously questioned under another provision of the Constitution. By section 1, article 5, the Constitution provides the mode and manner by which the Legislature may create criminal courts; and while by said section and article it is given the power to create other courts, it can not be held that this power, couched as it is in general terms, would authorize the Legislature to create a court whose jurisdiction was to be exercised at the expense of other courts created by the Constitution itself, or to create a criminal court in any other way or for any other purpose than that named in said section.

DAVIDSON, JUDGE.—The above is the brief of the State, prepared for us by Hon. R. H. Harrison, our Assistant Attorney-General, and we adopt it as the opinion of the court in this case in so far as the law is therein stated, and in doing so will add some further observations bearing upon the questions involved.

Section 1, article 5, of the State Constitution ordains, that "the judicial power of this State shall be vested in one Supreme Court, in one Court of Appeals, in District Courts, in County and Commissioners Courts, in courts of justices of the peace, and in such other courts as may be established by law. The Legislature may establish Criminal District Courts, with such jurisdiction as it may prescribe; but no such court shall be established unless the district includes a city containing at least 30,000 inhabitants as ascertained by the census of the United States or other official census; provided, such town or city shall support said Criminal District Courts when established." The effect of this provision is to vest in these courts the whole element of sovereignty known as the "judicial," prescribed by the Constitution and the laws enacted under it, except, perhaps, in a few instances, where powers of a judicial nature are expressly and specifically lodged elsewhere. Kilbourn v. Thompson, 103 U. S., 168; The People v. Keeler, 99 N. Y., 463, 2 N. E. Rep., 615; The State v. Noble (Ind. Sup.), 21 N. E. Rep., 244, *et seq.* Section 19, article 5, provides, that "justices of the peace shall have jurisdiction in criminal matters of all cases where the penalty or fine to be imposed by law may not be more than $200, and in civil matters of all cases where the amount in controversy is $200 or less, exclusive of interest, of which exclusive original jurisdiction is not given to the District or County Courts; and such other jurisdiction,

criminal and civil, as may be provided by law, under such regulations as may be prescribed by law." * * * It will be observed from the reading of the above that the words employed conveying jurisdiction are clear, strong, and entirely unambiguous. The jurisdiction of the court is so set out as not to be misunderstood, and the other provisions of article 5 of the Constitution do not abridge or qualify this jurisdiction. The quoted section may be held to authorize the conferring of additional jurisdiction upon the courts by virtue of the expression, "and such other jurisdiction as may be provided by law, and under such regulations as may be prescribed by law," etc.; but there is no authority in the Constitution authorizing the Legislature to abridge their jurisdiction. This view is in strict harmony with the prior decisions of this court holding that the County Courts have concurrent jurisdiction with such Justice Courts. Nor is this view in the slightest degree antagonistic to the authority conferred upon the Commissioners Courts to lay off and prescribe the territorial jurisdiction of said courts. Section 19, article 5, above quoted, refers to the jurisdiction of the subject matter involved in the controversy, and not to extent of territory. Nor is this view affected by the fact that the Legislature may enact or abrogate laws wherein the penalty involved is within the jurisdiction of said court. When a law is in force under which jurisdiction would attach to the court, that jurisdiction necessarily attaches, and when that law is repealed the jurisdiction necessarily ceases, because there is nothing to which it can attach. But as long as the law exists the jurisdiction is inherent in the court, and can not be divested by legislative enactment.

Our Constitution has ordained that "the powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit, those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Const. 1876, art. 2. This separation of the powers is not merely theoretical. They are practical and imperative, else the words employed are powerless, and the will of the people of the great sovereignty of Texas, expressed in their written Constitution, is but an empty and meaningless fulmination. The provisions quoted, taken with those not quoted, as well as the entire tone and spirit of the Constitution, make it too plain for argument that the courts enumerated in the Constitution possess the entire body of the intrinsic judicial power of the State, and that the other departments are prohibited from diminishing, changing, or altering that power, except wherein they are specifically authorized so to do by the Constitu-

tion itself. The authorities all sustain this position, as far as we have been able to ascertain.

Speaking of this question, Elliott, C. J., of the Supreme Court of Indiana, said: "The people have a right to the courts established by and under the Constitution, and this constitutional right the Legislature can neither alter nor abridge. The constitutional tribunals can not be changed by legislation. * * * The Legislature may establish courts, but it can not destroy the constitutional courts—the Circuit Courts and the Supreme Court—nor can it change their organization nor distribute their powers, for these courts owe their organization to the Constitution, and as the Constitution has ordained that they shall be organized, so shall they be. Judicial power distributed by the Constitution is beyond legislative control." The State v. Noble, 21 N. E. Rep., 244, 250. See this case for an able and exhaustive discussion of the questions involved, as well as authorities collated.

In New Jersey, referring to constitutional provisions similar to our own, the Court of Errors said: "In an examination of these sections, the first thing which attracts attention is this, that the instrument itself establishes certain courts. It does not leave that all-important work to other hands. An omission in this respect in the Constitution would have left the judicial system without any fixity whatever. In such a state of things, the powers and jurisdictions and even the very existence of the several courts would have been placed under the control of the Legislature. They could have been altered or abolished by that body at will. But the Constitution had no such purpose as this, and they therefore enumerated the superior tribunals in which was principally to reside the judicial powers of the government. By that enumeration these tribunals became constitutional courts—that is, courts that could not be altered or abolished except by an alteration of the instrument creating them. The peculiar quality of a constitutional court, or of any other constitutional establishment, is this, that it is not susceptible of change in its fundamental principles except in some prescribed mode. Thus, for example, the nature of this court, or the nature of the Supreme Court, can not be altered in any way but one—that is, by a modification of the Constitution itself. It is presumed that no professional gentleman would for an instant contend that the Legislature could deprive the decrees and judgments of this court of their quality of being conclusive, or could take from the Supreme Court any of those prerogative writs by which inferior jurisdictions are superintended and regulated. The power to do this would involve the power to modify in essential particulars the constitution of these courts—a power not to be distinguished from an authority to supersede or abolish. It is entirely clear, then, that the Legislature has not the competency to impair the essential nature or jurisdiction of any of the constitutional courts. To this extent, it seems to me, the

question is too plain for discussion." Harris v. Vanderveer, 21 N. J. Eq., 424; The State v. Noble (Ind. Sup.), 21 N. E. Rep., 244. This doctrine is supported by the decisions of other courts. It is unnecessary to quote from them, but we cite a few of the cases: Hutkoff v. Demorest, 103 N. Y., 377, 8 N. E. Rep., 899; The State v. Gannaway, 16 Lea, 124; Landers v. Railway, 53 N. Y., 450; In re Application of Senate, 10 Minn., 78 (Gil., 56); In re Senate Bill on Irrigation, 9 Colo., 620, 21 Pac. Rep., 470.

The question before us to be decided is one of serious import, and its decision is not one of discretion, but of most imperative duty. The duty of maintaining the separation and identity of the departments of government and the integrity and complete existence of each department as established and organized by the Constitution, is one of the most important and wholesome that the judiciary is called upon to perform, whether it relates to its own independence and co-ordinate equality or to that of one of the other departments. The destruction or subordination of either would be equally fraught with danger to the common weal. It is the solemn duty of courts to uphold the Constitution as it is written, permit no encroachments by one department upon another, and yield none of its own power and authority to any other department, nor assume any not confided to it. To this end the courts are organized and constituted, and for this purpose the judges are selected and qualified. When the limitations of the Constitution are violated and set at naught, free government can not exist. Assumption by one department of powers belonging to another inevitably leads to the destruction of the equality of the co-ordinate branches of government. If one department of the government can assume and exercise the authority of another, it can assume every power vested in that department and exercise them all. If one department could do so, then each department could do so, and each could be exercising at the same time the functions confided to itself as well as those confided to the others, and endless confusion would result in anarchy and ruin. One encroachment would justify another, and one by one every barrier would be overthrown and constitutional government destroyed. The jurisdiction vested in the courts is inalienable on the part of the courts themselves; nor can it be divested by the Legislature except in the mode and under such exceptions as may be prescribed by the Constitution itself. This view of such jurisdiction carries with it necessarily the corresponding duty on the part of the courts to exercise that power when called upon to do so in proper form. Alexander v. Bennett, 60 N. Y., 204; The State v. Noble (Ind. Sup. Ct.), 21 N. E. Rep., 244.

In so far as the authority of the Legislature to divest the Justice Courts of their jurisdiction is concerned, it may be stated that it has no more authority for this purpose than it has to abolish the authority of this court or that of the Supreme Court and divest them of their constitu-

tional powers and jurisdiction. If it be conceded that the Legislature can withdraw original jurisdiction from a constitutional court in one respect, it must also be conceded that it can divest the same court of all jurisdiction. If the Legislature can divest a Justice Court of its jurisdiction in one respect in the city of Fort Worth, then it can abrogate that jurisdiction *in toto* in that city; and if in that city, then in every city in the State; and if in the cities of the State, then with equal propriety and authority it can do so in every precinct in every county in the State. The constitutional jurisdiction conferred upon the Justice Courts is the same wherever that court is found in this State. The Constitution makes no distinction, and it is wholly immaterial what may be the territorial limits of the court. The Constitution governs all alike. That court is the creature of the Constitution, and is of equal standing with the Legislature as to its origin and parentage, and in its peculiar sphere is the superior of that body. If the Legislature can curtail the jurisdiction of one court, it can of all. If that authority exists as to one, it does as to all. If it exists as to one district, county, or precinct, it exists as to all. If this power be conceded to the Legislature, then we have the singular phenomenon of a legislative court, created either by general law or a series of special laws, superseding a constitutional court, without abolishing such courts, or the power to do so, and yet leaving that court in existence deprived of the subject matter upon which to act. It is presumed that no court would uphold such a conclusion or doctrine or rule of construction.

The Mississippi Supreme Court, Cooper, J., delivering the opinion of the court, said: "By section 14 of article 6 of the Constitution, original jurisdiction is conferred upon the Circuit Courts of the State in all criminal matters, and such jurisdiction can not be withdrawn by the legislative department of the government. The legislative, the executive, and the judicial departments are each protected by the Constitution against encroachments by the others, and the power conferred upon either can not be withdrawn or abridged by either or both of the co-ordinate branches. If the Legislature may withdraw from the constitutional court jurisdiction conferred by the Constitution over one class of cases, it may withdraw it over another and another, until finally there would be no subject over which it might be entertained." Montrose v. The State, 61 Miss., 429, 432. The question of authority on the part of the Legislature to confer jurisdiction upon municipal courts concurrent with that of the State courts is neither discussed nor intended to be discussed herein, because it is not raised in the record, nor necessary to a determination of the question involved in this appeal; and for the same reason the further question of legislative authority to confer upon municipal courts jurisdiction to hear and determine causes arising under the State laws is pretermitted. The only question intended to be passed on is the authority of the Legislature to

create municipal courts with power to exercise exclusive jurisdiction over infractions of State laws, to the exclusion of the courts created by the Constitution, and whose jurisdiction has been fixed therein.

We are of opinion that so much of said section 26 of the amended charter granted to the city of Fort Worth as attempts to confer upon the City Court of said city exclusive jurisdiction of offenses committed against the Sunday law prohibited by the State, is in contravention of the Constitution of this State, and therefore void. The judgment of the County Court is in all things affirmed.

*Affirmed.*

Hurt, J., gives no opinion in this case at this time, but will, if necessary, file his opinion hereafter.