## EXPARTE C. M. COX.

1. The constitution of 'his State in organizing the judiciary thereof has assigned to each court created thereby certain jurisdiction therein designated, and has provided that the legislature may give to certain of these courts additional jurisdiction. Where no such provision is made in the constitution the legislature can not confer upon one of these courts jurisdiction not given it by the constitution. TAYLOR, C. J., and MABRY, J., dissenting.

2. A writ of error does not lie from the Supreme Court of this State to review a judgment rendered by an individual justice thereof in a habeas corpus proceedings. TAYLOR, C. J., and MABRY, J., dissenting.

This case was decided by the court En Banc.

The writ of error in this cause was issued by the clerk of the Supreme Court to a judgment rendered by a Justice of the Supreme Court in a habeas corpus proceeding before him.

*C. M. Cox*, in pro per.

*S. K. Gillis*, for Respondent.

MAXWELL, J.

A writ of error from this court was sued out by petitioner to review a judgment in a habeas corpus proceeding rendered by a Justice of this court. before whom the writ of habeas corpus was returnable. The question arises whether this court has appellate jurisdiction in such a case.

The right of appeal is not as of course, and if it exists, it is because provision is made therefor in our organic or statute law. In re. Curley, 34 Iowa, 184.

In section 5 of Article V of our constitution, jurisdiction is conferred upon this court as follows: "The Supreme Court shall have appellate jurisdiction in all cases at law and in equity originating in Circuit Courts, and of appeals from the Circuit Courts in cases arising before judges of the county courts in matters pertaining to their probate jurisdiction, and in the management of the estates of infants, and in cases of conviction of felony in the Criminal Courts, and in all criminal cases originating in the Circuit Courts. The court shall have the power to ssue writs of mandamus, certiorari, prohibition, quo warranto, habeas corpus, and also all writs necessary or proper to a complete exercise of its jurisdiction." Then follows a provision that each justice may issue writs of habeas corpus, under which provision the original writ herein was issued.

It is apparent that this section, except as to crimmial cases, provides for appeals only from the Circuit Court, and gives such jurisdiction in two classes of cases. The first is that in which the jurisdiction of the Circuit Court is original, and it then applies to "all cases in law and equity originating in Circuit Courts," the second is that in which the jurisdicton of the Circuit Court is appellate, where it applies only to certain designated cases. The case at bar has not been before the Circuit Court, and there is, therefore, no express constitutional provision for writ of error therein.

The statutory provision for writs of error in habeas corpus proceedings is found in Chapter 4920 of the acts of 1901, amending section 1780 of the Revised Statutes,

and we will assume for the purposes of this case that
the language of the act is broad enough to embrace such
writ to review the judgment of a justice of this court.
The jurisdiction of this court will then depend upon the
validity of this act.

The constitution, in section 1 of Article V, provides
that "the judicial power of the State shall be vested in
a Supreme Court, Circuit Courts, Criminal Courts,
County Courts, County Judges and Justices of the
Peace." It then proceeds to organize and prescribe the
appellate jurisdiction of certain cases "and of such other
jurisdiction of each of these courts. After providing as
above set forth for the jurisdiction of this court, in sec-
tion 11 of the same Article it gives the Circuit Courts
original jurisdiction of certain designated cases "and of
such other matters as the legislature may provide," and
matters as the legislature may provide." Subsequent
sections fix the jurisdiction of each of the other courts
created by this article, in some instances, making it def-
inite, and in others leaving it to be fixed by law, within
certain prescribed bounds. Provision is made for the
appointment of a referee in certain cases, and that "the
cause shall be subject to an appeal in the manner pre-
scribed by law."

In so organizing the judiciary of the State it is evident
that the framers of our constitution have undertaken
to prescribe the powers of each of the courts so created,
and when they felt it necessary that provision be made
for further jurisdiction, in order that the courts by the
flexibility of their powers might meet the unforeseen or
growing demands engendered by new conditions. they
made express provision therefor, designating therein the
courts upon which such grant of power should be con-

ferred. Where no such power is delegated to the legislature, it can not vest in one of these courts jurisdiction of a matter withheld from it by the constitution.

This view is adopted in Texas, when it is said that "in framing the provisions of Article 5 'it was the object of the farmers of the constitution to mark out a complete judicial system, defining generally the province of each of the courts by reference to the objects confided to the action of each, and the relation of each to the others. Such a system can not be changed by action of the legislative department, except when the power to make the change is conferred by the constitution itself.' Ex parte Towles, 48 Tex. 413; Ex parte Ginnochio, 30 Tex. Ct. App. 584, 18 S. W. Rep. 82; Gibson v. Templeton, 62 Tex. 555;" Leach v. State, 36 Tex. Cr. App. 248, 36 S. W. Rep. 471; Titus v. Latimer, 5 Tex. 433; Ex parte Whitlow, 59 Tex. 273. And in California, Caulfield v. Hudson, 3 Cal. 389; Parsons v. Tuolumne County Water Co. 5 Cal. 43. See, also, Auditor v. Atchison, Topeka & Santa Fe R. R. Co. 6 Kan. 500, and the leading cases of Marbury v. Madison, 1 Cranch, 137, followed in Florida v. Georgia, 17 Howard, 478, text 505-9; State ex rel. King v. Hall, 47 Neb. 579, 66 N. W. Rep. 642; Lake v. Lake, 17 Nev. 230, text 238, 30 Pac. Rep. 878; Cass v. Davis, 1 Col. 43; Godbe v. City of Salt Lake, 1 Utah, 68; Territory v. Ortiz, 1 New Mex. 5; Kent v. Mahaffy, 2 Ohio St. 498. Other cases holding that the legislature is not authorized to confer jurisdiction upon constitutional courts, though in those cases the language of the constitution was more restrictive than in ours, are Ex parte Jones, 2 Ark. 93; Flanagan v. Plainfield, 44 N. J. L. 118; State v. Glannaway, 16 Lea (Tenn.) 124; State v. Bank of East Ten-

nessee, 5 Sneed (Tenn.) 573; Vail v. Denning, 44 Mo. 210.

A decision by this court very much in point is that of Singer Mfg. Co. v. Spratt, 20 Fla. 122, in which it is held that as the constitution had expressly conferred upon the Circuit Courts original jurisdiction in certain cases, not embracing the writ of prohibition,, it had no jurisdiction of this matter  · The court says: "Here we have the jurisdiction of the Circuit Courts and of the Supreme Court sharply defined. The power to issue the writ of prohibition is in clear words given to the Supreme Court as an original proceeding. The constitution enumerating what original writs may be issued, omits to name the writ of prohibition as within the power of the Circuit Courts and judges, but expressly gives the power to issue this writ to the Supreme Court. The ancient maxim *'inclusio unius est exclusio alterius'* is applicable. As a writ 'necessary to the complete exercise of their jurisdiction' the Circuit Courts may issue a prohibition or any other appropriate writ to protect its jurisdiction in any cause properly before it, but this is ancillary to a jurisdiction already acquired and not an original process by which to obtain jurisdiction. *Nor is it within the power of the legislature to enlarge the jurisdiction so strictly defined."* The italics are ours. The court then quotes approvingly and applies Marbury v. Madison, above cited.

The application of this doctrine to the present case is made more pointed by the fact that the appellate jurisdiction of this court is prescribed in the same section of the constitution which authorizes one of its jus-

tices to act in habeas corpus proceedings. With both subjects under consideration at the same time, no provision is made in the one making it applicable to the other. Whether the same rule would apply equally as to appeals from the exercise of judicial powers created under subsequent amendments, we need not consider.

And it is further to be observed that unlike the constitution of some States and that first in force in this State, our present constitution does no provide that the Supreme Court shall have general superintendence and control of all other courts. It has merely prescribed that it shall have certain stated appellate jurisdiction, and certain stated original jurisdiction, with no provision in the case of Circuit Courts, that the legislature can enlarge this.

It only remains to comment upon and distinguish certain decisions of this court which may perhaps be regarded as indicating a different view from that here expressed.

In Ex parte Henderson, 6 Fla. 279, it was held that the legislature had power to provide for appeals from Justice Courts to the Circuit Courts, though only original jurisdiction had been expressly conferred by the constitution upon the latter courts. The court held that as the trial upon appeal was *de novo* it was an exercise of original and not of appellate jurisdiction, the one ingredient of appellate power being that the case had had its origin in the inferior court. Furthermore, the constitution then in force provided, in section 10 of Article V, that "in cases tried before a justice of the peace the right of appeal shall be secured under such rules and regulations as may be prescribed by law." No court

was named as the depository of the appellate jurisdiction contemplated by this provision, and the legislature charged with the duty of making provision therefor very properly reposed it in the Circuit Courts, where it had been for twenty years before the constitution was in force.

In Thebaut v. Canova, 11 Fla. 143, Swepson v. Call, 13 Fla. 337, State ex rel. Florida Pub. Co. v. Hocker, 35 Fla. 19, 16 South. Rep. 614, and Chapman v. Reddick, 41 Fla. 120, 25 South. Rep. 673, the power of the legislature to provide for the transfer of a cause from one circuit to another, for the judge of one circuit to hear a cause pending in another, and for process from one circuit to be executed in another, is recognized and upheld. This, however, is in the nature of a regulation or provision for the more effectual exercise of the jurisdiction already vested in these courts by the constitution, and is sustained as being not in conflict with the constitution in this regard, but in furtherance of its provisions and purposes.

In the last mentioned case this language is used: "While constitutional jurisdiction can not be restricted or taken away, it can be enlarged by the legislature in all cases where such enlargement does not result in a diminution of the constitutional jurisdiction of some other court, or where such enlargement is not forbidden by the constitution. State ex rel. Florida Publishing Co. v. Hocker, 35 Fla. 19, 16 South. Rep. 614; Harris v. Vandeveer's Exr., 21 N. J. Eq. 424." This must be construed with reference to the question involved in that case, which was the right of the legislature to provide, in aid of the jurisdiction vested in the Circuit Courts, that writs issuing therefrom might be levied upon prop-

erty situated in other circuits. And the authorities cited therein will not carry the proposition beyond this. The first, 35 Fla. 19, is that cited by us holding that a Circuit Judge may dispose of a demurrer pending in another circuit.

The other, 21 N. J. Eq. 424, upheld a statute providing for appeal from the prerogative court to the Court of Errors and Appeals. The constitution creating the latter court constituted it "a Court of Errors and Appeals in the last resort in all causes, as heretofore." It was contended that the words "as heretofore" related to the word "causes" and were restrictive of the jurisdiction of the court. The court repudiated this construction and treated the provision as making the court one, as theretofore, of last resort *in all causes.* This they held to authorize the jurisdiction conferred by the act in question.

It is most pertinent to the case at bar to note that they held that if the words "as heretofore" were given the interpretation contended for, limiting the grant of power therein made to the jurisdiction previously vested in the court, it would be a bar to conferring upon it appellate jurisdiction of any new matters thereafter confided to the inferior courts; and that a minority of the court, giving them that construction, held the act in question unconstitutional.

The writ of error in this case will be dismissed.

SHACKLEFORD and COCKRELL, JJ., concur.

CARTER, J., did not take part in the decision of this case.

TAYLOR, C. J., dissenting.

I am unable to agree with the conclusion reached and expressed in the opinion prepared by my brother Judge MAXWELL as to the interpretation to be put upon section 5 of Article V of our constitution, defining the jurisdiction of the Supreme Court.  Its language is: "The Supreme Court shall have appellate jurisdiction in all cases at law and in equity *originating* in Circuit Courts." It can hardly be said that the framers of that instrument in thus prescribing the *general* jurisdiction of the court of last resort undertook to make  the fact of the actual *beginning* of cases the test of such jurisdiction, or that it. intended to make such jurisdiction depend, not upon the *class* or *character* of the case but solely upon the fact of its having been commenced in some particular court regardless of the class or character of the case itself.   My view is that such was not its intention; but, on the contrary, that its design was to make the appellate jurisdiction of this court depend upon the *class* or *character* of the case, and that it made use of the expression *"originating in Circuit Courts,"* simply as a definition of the class or character of the cases in general that it should have appellate jurisdiction of, and that such jurisdiction in no sense depends upon the bare fact of the forum in which any given case has its actual *beginning.*. Suppose, *illustratio,* some benighted individual should file a bill in equity in due and ancient form in the court of some still more benighted justice of the peace to foreclose a mortgage on land  for $100, and such J. P. despite demurrers, pleas to the jurisdiction, &c., should enter a decree for foreclosure likewise in due, ancient and prolix form,

an appeal is taken to the Circuit Court, and the Circuit
Judge, in absent minded mood, should affirm such decree,
is there any doubt but that this court upon appeal or
certiorari would have the power to undo the whole mis-
guided. proceeding, regardless of the court in which it
had its origin, or would it be deprived of the corrective
power of appellate review simply because of the fact,
though a cause in equity, it was not *commenced* in the
Circuit Court.   Section 11 of. the same article of our con-
stitution, in defining the jurisdiction of Circuit Courts,
uses this language:  "The Circuit Courts shall have ex-
clusive *original* jurisdiction in all cases in equity, also in
all cases at law, not cognizable by inferior courts," &c.
This section being *in pari materia* with section 5, above,
of the same instrument, the two must necessarily be
construed together.   In section 11 the class of cases that
can *rightfully* and *properly* be *originated* in the Circuit.
Courts is clearly but in general terms defined, and section
5, in contemplation of the fact that a cause can not *orig-
inate* in a court having  no original jurisdiction to enter-
tain it, uses the word "originating" in the sense of defin-
ing a general class of causes that may rightfully and
properly originate in Circuit Courts, and not in the re-
stricted sense of causes that do in fact originate there,
whether properly or improperly.   The word *"originating"*
used in section 5 should be given a broad and liberal con-
struction consistent with the patent design of the consti-
tution to give the court of last resort appellate review of
any and all cases, that *may properly* originate in Circuit
Courts by reason of the fact that the latter courts are
given *original* jurisdiction over them.   How can a cause
be said to *originate* in a court unless such court is clothed
with *original* jurisdiction over it?   And when we say, in

the broad general language of a constitution, "causes originating in Circuit Courts," is it not necessarily understood that such causes are contemplated over which Circuit Courts have the *initiatory* right to entertain jurisdiction, and not to such cases only as may happen to be *actually commenced* therein. My view is that said section 5 gives to this court jurisdiction to review any and every cause over which Circuit Courts are now vested with *original* jurisdiction, and also in all causes that may in future be properly put within the *original* jurisdiction of such Circuit Courts by legation, and if a case be found in which some other tribunal is given concurrent original jurisdiction with the Circuit Court, the right of review vests in this court over such case, regardless of the fact as to whether it was *actually commenced* in such Circuit Court, if it belongs to a class of cases over which such Circuit Court *might* have entertained original jurisdiction. But even if this construction be not correct, we have said in Chapman v. Reddick, 41 Fla. 120, text 133, 25 South. Rep. 673, that "while constitutional jurisdiction can not be restricted or taken away, it can be enlarged by the legislature in all cases where such enlargement does not result in a dimunition of the constitutional jurisdiction of some other court or where such enlargement is not forbidden by the constitution." We have a constitutional inhibition against the creation of other judicial tribunals than those expresssly established by that instrument, but where in its provisions relating to the jurisdiction of this court is the inhibition against the enlargement by legislation of such jurisdiction in any direction that does not encroach upon jurisdiction expressly lodged elsewhere? The only answer is, *expressio unius est exclusio alterius.*. The principle of this maxim should be

applied with great caution to the provisions of an organic law that is supposed to deal with its subjects in the broadest and most comprehensive sense, and that never goes into individual details. I have no doubt that section 1780 Rev. Stats., as amended by Chapter 4920, laws of 1901, undertakes to give to this court the right to review upon writ of error the judgment of an individual justice thereof in a habeas corpus case. This being true, in order to deny such jurisdiction it is necessary to adjudge this statute to be in violation of the constitution. What specific provision of that instrument does it transgress? The answer is still *expressio unius est exclusio alterius,* and this in the face of the principle so often announced by this and other courts that if there is any reasonable doubt as to whether any legislative enactment violates the constitution, such legislation should be upheld by the courts.

MABRY, J., dissenting.

It being conceded in this case that the legislature has by statute undertaken to provide for a review of a decision rendered by a justice of this court in habeas corpus cases by writ of error to the Supreme Court, the question considered by the court is whether the legislature has power to enact such a provision. The settled rule in this court is that if there be a reasonable doubt as to the constitutionality of a statute passed by the legislature, the statute should be sustained.

By the fifth, or Judiciary, Article of the constitution, the judicial power of the State is vested in a Supreme Court, Circuit Courts, Criminal Courts, County Courts, County Judges and Justices of the Peace, with authority

in the legislature to establish in incorporated towns and cities courts for the punishment of offenses against municipal ordinances. In the thirty-fifth section of the article it is ordained that no courts other than those therein specified shall be established in this State, with an amendment thereto that the legislature may confer judicial power upon the railroad commission. The jurisdiction and powers of the designated inferior courts are granted, or provided for, with appellate review from the lower to superior courts. The Circuit Courts shall have final appellate jurisdiction in all civil and criminal cases arising in the county court, or before the County Judge, of all misdemeanors tried in criminal courts, of judgments or sentences of any mayor's court, and of all cases arising before justices of the peace in counties in which there is no county court, and supervision and appellate jurisdiction of matters arising before county judges pertaining to their probate jurisdiction, or to the estates and interests of minors, and of such other matters as the legislature may provide. The original and exclusive original jurisdictions of the Circuit Courts are defined, and by the fifth section of the article it is ordained that "the Supreme Court shall have appellate jurisdiction in all cases at law and in equity originating in Circuit Courts, and of appeals from the Circuit Courts in cases arising before judges of the county courts in matters pertaining to their probate jurisdiction and in the management of the estates of infants, and in cases of conviction of felony in the criminal courts, and in all criminal cases originating in the Circuit Courts. The court shall have the power to issue writs of mandamus, certiorari, prohibition, quo warranto, habeas corpus, and also all writs necessary or proper to the complete exercise of its jurisdiction. Each of the jus-

tices shall have power to issue writs of habeas corpus to any part of the State upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself or the Supreme Court, or any justice thereof, or before any Circuit Judge." Appellate power is conferred upon the Supreme Court in certain enumerated cases, but there are no terms of negation in the grant. Undoubtedly in the exercise of the various judicial powers by the different courts specified, the Supreme Court has appellate power, and can only have appellate power, in the cases enumerated in the fifth section. The grant of jurisdiction to the inferior courts and the express provision for a review of its exercise by other courts than the Supreme Court would exclude the jurisdiction of this court, unless otherwise expressly provided. But express power is conferred upon a justice of the Supreme Court to hear and determine habeas corpus cases, and his powers in this respect are distinct from those exercised by any of the other courts enumerated in the constitution. It is true that he has in such cases concurrent powers with Circuit Courts and the Supreme Court, but it can not be said that while acting in such matters he is either a Circuit Court or a Supreme Court, as organized by the constitution. The theory of our constitution in reference to the organization of the different courts mentioned for the exercise of usual judicial powers is that appeals can only come to the Supreme Court from any of the enumerated inferior courts in the cases mentioned, but the powers of a justice of this court in habeas corpus matters are exceptional and rest upon a special grant in the constitution. Such a grant in the absence of some prohibition would not exclude the right of the legislature to authorize a review of his deci-

sion, and as the constitutional grant of appellate power over certain cases originating in the inferior courts enumerated contains no words of negation, it seems to me that it should not be so construed as to prevent the legislature from authorizing a review of a decision of a justice of this court in the special exercise of power in habeas corpus cases. This conclusion is in conflict with the opinion of the majority of the court, and entertaining the view that the statute authorizes a writ of error from this court to review the decision of a justice of this court, I do not agree to the result in this case.